# EXHIBIT A

Electronically Filed Superior Court of CA County of Contra Costa 3/6/2026 1:54 PM By: K. Whitworth, Deputy

SUMMONS ISSUED

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Julia K. Venditti (State Bar No. 332688)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com
          jvenditti@bursor.com

Per local Rule, This case is assigned to
Judge Reyes, Benjamin T, II, for all purposes.

*Attorneys for Plaintiff*

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| SEAN MCGINITY, individually and on behalf of all other persons similarly situated,<br><br>                         Plaintiff,<br><br>         v.<br><br>THE HOME DEPOT, INC., and DOES 1 through 100, inclusive,<br><br>                         Defendants. | Case No.    C26-00794<br><br>CLASS ACTION – JURY TRIAL DEMANDED<br><br>**COMPLAINT** |

CLASS ACTION COMPLAINT                                                                                                                 1

Exhibit A Page 1

Plaintiff Sean McGinity ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against The Home Depot, Inc. ("Home Depot") and Does 1-100 (collectively, the "Does") (collectively referred to as "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a putative class action against Defendants for violations of Plaintiff's and other Class Members' right to privacy and protection of personally identifiable information ("PII") under Civil Code § 1798 ("§ 1798") and other relevant consumer protection statutes.

2. Automated License Plate Reader ("ALPR") systems are highspeed cameras—usually with accompanying software—that record, capture, analyze and store information about vehicles' make, model, and license plate numbers. Oftentimes, these cameras capture photographs of an entire vehicle as it passes, as well as its driver and passengers. The date and time that the photograph is taken is also captured.

3. ALPRs are indiscriminate: they capture photographs of any vehicles that pass by the camera.[1] This means that, as more ALPRs are installed over wider geographic areas, a picture of a car's—and by extension, its driver's—activity can form over time. For example, "ALPR technology can be used to target drivers who visit sensitive places such as health centers, immigration clinics, gun shops, union halls, protests, or centers of religious worship."[2]

4. In response to concerns that "[t]he right to privacy is being threatened by the indiscriminate collection, maintenance, and dissemination of personal information" and that "[t]he increasing use of computers and other sophisticated technology has greatly magnified [that] risk" the California legislature passed § 1798 intending to limit the collection, use, and dissemination of ALPR data. (Civ. Code § 1798.1 (a)—(b).)

5. An organization known as Flock Group Inc. ("Flock Safety" or "Flock"), founded in

[1] *See* Electronic Frontier Foundation*, Data Driven: What Is ALPR?,* https://www.eff.org/pages/what-alpr (last accessed Mar. 4, 2026).
[2] *Id.*

2017, is a nationwide, private vendor of ALPR cameras ("Flock cameras") and accompanying software that allows for the analysis of its cameras' data.

6. Flock provided Automated License Plate Recognition ("ALPR") systems to Home Depot for the purpose of capturing the license plate information, location, date, and time as Plaintiff and the Class Members entered and exited various Home Depot parking lots.

7. Defendant Home Depot implemented and maintained, without proper notice, Automated License Plate Recognition ("ALPR") systems that captured the license plate information, location, date, and time as Plaintiff and the Class Members entered and exited any of Home Depot's California-based locations.

8. Flock maintains and stores mass amounts of data captured from its system of Flock cameras at Defendant's properties.

9. Defendant Home Depot also did not maintain proper security procedures, practices or safeguards, to protect ALPR information from unauthorized access or disclosure.

10. The information collected by the ALPR systems constitutes PII and therefore is entitled to specific protections under the laws of California.

11. Defendant Home Depot utilizes Flock's ALPR systems to simplify the parking process and parking lot security amenities for visitors of California-based locations.

12. However, nowhere in Home Depot's parking lots are there proper, publicly posted policies detailing Defendant's use of Flock's ALPR systems, thereby entitling Plaintiff and the Class Members to damages and injunctive relief.

13. Defendants' lack of notice induced reasonable consumers, like Plaintiff McGinity, into parking at Defendant Home Depot's California-based properties, including the Home Depot locations in Martinez, California and Sacramento, California. Had Plaintiff, and all other similarly situated consumers, known that Defendants provided, implemented, utilized and maintained ALPR systems that captured their PII—and that those ALPR systems did not properly safeguard access to or disclosure of their PII—they would not have parked there at all.

14. Plaintiff asserts claims on behalf of himself, and all others similarly situated for: (i)

CLASS ACTION COMPLAINT                                                                                         3

unauthorized access and use of ALPR information, (ii) failures to implement code compliant privacy policies and maintain a record of ALPR data and access to it, and (iii) negligence.

## PARTIES

15.     Plaintiff Sean McGinity is domiciled in Sacramento, California.  Plaintiff visited Home Depot on numerous occasions before December 28, 2025, including as recently as September 6, 2025. Plaintiff's data, including his license plate number, was obtained through ALPR devices, and was subsequently collected, stored, and transmitted at multiple Home Depot locations, including the Home Depot located at 1037 Arnold Dr, Martinez, CA 94553 and the Home Depot located at 8000 Folsom Blvd, Sacramento, CA 95826.

16.     Defendant Home Depot owns and/or operates more than 2,300 stores in North America. Home Depot owned and/or operated ALPR equipment and systems that photographed Plaintiff's and Class Members' license plate numbers at its California-based properties, including the Home Depot located in Martinez, California, and the Home Depot located at 8000 Folsom Blvd, Sacramento, CA 95826. Home Depot is also secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego for the various acts and omissions set forth below, which injured Plaintiff and the Class Members.

17.     Plaintiff is unaware of the true identities and capacities of fictitiously named defendants designated as Does 1—100 but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, every Doe Defendant is in some way responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff. Each reference in this complaint to "Defendants," or a specifically named defendant, refers also to Home Depot and those unknown parties sued under fictitious names.

## JURISDICTION AND VENUE

18.     The Court has personal jurisdiction over Defendant Home Depot because it purposefully maintains, operates, or owns multiple California-based stores in the State of

CLASS ACTION COMPLAINT                                                                                    4

California, including the Home Depot located in Martinez, California, and the Home Depot located at 8000 Folsom Blvd, Sacramento, CA 95826, and because it owns, operates, maintains or utilizes the parking lots where Defendant installed Flock's ALPR cameras in California.

19.    The Court also has personal jurisdiction over each of the Does, who, upon information and belief, reside in California.

20.    This is a class action brought pursuant to Code of Civil Procedure § 382, and this Court has subject matter jurisdiction over Plaintiff's claims because the amount in controversy exceeds the Court's jurisdictional minimum.

21.    Venue is proper under Code of Civil Procedure§ 395(a), 395.5, and Civil Code § 1780(c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this county.

## FACTUAL ALLEGATIONS

### I.    Overview of ALPR Camera Use

22.    ALPR systems are a type of computer-controlled camera system that "automatically capture[s] all license plate numbers that come into view, along with the location, date, and time."[3]

23.    They are often used in the form of "mobile units attached to police vehicles or stationary/fixed units that are mounted on utility poles, traffic lights, billboards, bridges, etc."[4] "The data, which includes photographs of the vehicle and sometimes its driver and passengers, is then uploaded to a central server."[5]

24.    ALPR technology is not new. It has existed in some form since the 1970s but rose to prevalence in the United States starting in 2009.

25.    The primary users of ALPRs are local/municipal law enforcement agencies,

---

[3] Electronic Frontier Foundation, *Automated License Plate Readers* (last updated Oct. 1, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs.

[4] John A. Shjarback, et al., *An Evaluation of a Major Expansion in Automated License Plate Reader (ALPR) Technology*, 8(2) JUSTICE EVAL. J. 225–242 (2025), available at https://www.tandfonline.com/doi/full/10.1080/24751979.2025.2473363.

[5] Electronic Frontier Foundation, *Automated License Plate Readers* (last updated Oct. 1, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs.

county/sheriff's offices, and state police/highway patrol.[6]

26. But ALPR use is not limited to law enforcement agencies. ALPR systems are also implemented by private entities, including in parking lots and garages, homeowners' associations, gated communities, and shopping malls.

27. "ALPR data is gathered indiscriminately, collecting information on millions of ordinary people. By plotting vehicle times and locations and tracing past movements, police can use stored data to paint a very specific portrait of drivers' lives, determining past patterns of behavior and possibly even predicting future ones—in spite of the fact that the vast majority of people whose license plate data is collected and stored have not even been accused of a crime."[7]

28. This data is often stored on the ALPR server for years without the person whose data is being stored having any knowledge of the fact.

29. Privacy and civil rights organizations have been sounding the alarm on these types of surveillance systems for years. They warn that this rapidly developing technology, initially used for proper law enforcement and community protection, will ultimately reach beyond its original purpose.

30. Specifically, they warn that this technology can be used to target protestors, dissidents,[8] activists and even individuals who are the subject of personal vendettas.[9]

## II. Flock Safety's Surveillance System

31. Flock was founded in 2017 by CEO Garrett Langley, who came up with the idea for

---

[6] John A. Shjarback, et al., *An Evaluation of a Major Expansion in Automated License Plate Reader (ALPR) Technology*, 8(2) JUSTICE EVAL. J. 225–242 (2025), available at https://www.tandfonline.com/doi/full/10.1080/24751979.2025.2473363.

[7] Electronic Frontier Foundation, *Data Driven: What Is ALPR?*, https://www.eff.org/pages/what-alpr (last accessed Mar. 4, 2026).

[8] Electronic Frontier Foundation, *Flock Safety and Texas Sheriff Claimed License Plate Search Was for a Missing Person. It Was an Abortion Investigation.* (Oct. 7, 2025), https://www.eff.org/deeplinks/2025/10/flock-safety-and-texas-sheriff-claimed-license-plate-search-was-missing-person-it (last accessed Mar. 4, 2026).

[9] WKRC/Local 12, *Police chief gets caught using license plate cameras to track his ex- girlfriend 228 times* (Aug. 18, 2024), https://local12.com/news/nation-world/police-chief-gets-caught-using-license-plate-cameras-to-track-his-ex-girlfriend-228-times-arrests-charges-probation-flock-safety-follow-stalk-new-boyfriend-broke-up-out-of-town-misuse.

CLASS ACTION COMPLAINT                                                                 6

the company after he became the victim of a property crime in Atlanta, Georgia.

32.    Flock sells both hardware—in the form of license plate readers, video cameras and drones—and software—in the form of its FlockOS, Flock Nova, Flock 911, and Flock FreeForm systems.

33.    Flock's license plate reader (LPR) cameras are part of its "LPR Camera Family."

34.    The LPRs come in "standard" (two lane roads and driveways), "long-range" (high-speed vehicles on highways), "trailer" (temporary coverage for events), and "flex" (short-term, movable coverage) versions.

35.    These LPRs make up what Flock calls its National LPR Network. According to its own data, Flock's National LPR Networks facilitates *20 billion* reads of license plates per month. The network operates across 49 states, covers 5,000+ communities, and works with 4,800+ law enforcement agencies.

36.    The National LPR Network is mainly for law enforcement use, but Flock also runs a private counterpart to this national database of Americans' vehicle information: the Flock Business Network.

37.    According to a press release issued by Flock, "For years, our law enforcement customers have used the power of a shared network to identify threats, connect cases, and reduce crime […] Now, we're extending that same network effect to the private sector[.]"[10] The Flock Business Network "formalizes and secures" businesses' data sharing on retail theft, "enabling organizations to opt into private, permission-controlled partnerships with trusted peers in their community or industry."[11]

38.    At least 1,000 businesses rely on Flock's technology as of 2025.[12]

---

[10] *See* GlobeNewswire, *Flock Launches First-Ever Business Network to Strengthen Private Sector Security Collaboration*, https://www.globenewswire.com/news-release/2025/06/23/3103700/0/en/Flock-Launches-First-Ever-Business-Network-to-Strengthen-Private-Sector-Security-Collaboration.html (Jun. 23, 2025)

[11] *Id.*

[12] *See* Flock Safety, *The Power of Connected Intelligence*, https://www.flocksafety.com/blog/the-power-of-connected-intelligence (Sep. 18, 2025)

CLASS ACTION COMPLAINT                                                                 7

39.    In other words, there is a sprawling network of Flock ALPR cameras installed across the United States that take pictures of millions of Americans' vehicles as they drive to and fro.

40.    To store the information captured by these cameras, Flock, created, maintained, operated or facilitated at least two data storage networks, the National LPR Network and the Flock Business Network, that offer nationwide access to Americans' license plate data and PII.

**III.    Defendant Home Depot's Documented Lack of Data Security Protocols**

41.    If the National LPR Network and the Flock Business Network were used solely for their original purpose—solving crimes through regulated law enforcement channels who have limited access to Americans' data—then such technology would pose no risk to the everyday citizen.

42.    But despite Flock's assurances, its technology has led to alarming consequences. Flock Safety has been in the news multiple times for its hidden monitoring of thousands of Americans, and for overreaches of its nationwide surveillance network.

43.    For example, Flock has been criticized for allowing "more than 50 federal, state, and local agencies" to run "hundreds of searches through Flock's national network of surveillance data in connection with protest activity" where "law enforcement specifically targeted known activist groups."[13]

44.    Flock was revealed to have allowed federal agencies "side-door access" to its surveillance tools despite not "hav[ing] a formal contract" with those agencies.  Specifically, "more than 4,000 nation and statewide lookups by local and state police [were] done either at the behest of the federal government or as an 'informal' favor to federal law enforcement, or with a potential immigration focus."  Put differently, "while Flock does not have a contract with ICE, the agency

---

[13] *See* Electronic Frontier Foundation*, How Cops Are Using Flock Safety's ALPR Network to Surveil Protesters and Activists*, https://www.eff.org/deeplinks/2025/11/how-cops-are-using-flock-safetys-alpr-network-surveil-protesters-and-activists (Nov. 20, 2025).

---

CLASS ACTION COMPLAINT                                                                    8

sources data from Flock's cameras by making requests to local law enforcement."[14]

45. It was revealed in August 2025 that "Customs and Border Protection (CBP) regularly searched more than 80,000 Flock automated license plate reader (ALPR) cameras, according to data released by three police departments …. One of the police departments … said it did not know or understand that it was sharing data with CBP."[15]

46. Because Flock works with troves of Americans' sensitive data, and because Flock's track record of data security is already questionable,[16] an ALPR operator or ALPR end-user like Defendant Home Depot is obligated to implement and maintain its own security procedures and safeguards to further protect ALPR information from unauthorized access, use, or disclosure.

47. Defendant Home Depot has not done so. Instead, since at least March 2025, Home Depot has been sharing camera feeds or footage from its Flock cameras with law enforcement.[17]

48. The exact date that Defendant's relationship with Flock began is known only to Defendant. Upon information and belief, Defendant contracted with Flock and deployed Flock's ALPR cameras prior to March 2025, since the infrastructure for sharing video camera footage from Defendant's parking lots was already in place at that time.[18]

49. Upon information and belief, based on Defendant Home Depot's large number of

---

[14] *See* 404 Media, *ICE Taps into Nationwide AI-Enabled Camera Network, Data Shows*, https://www.404media.co/ice-taps-into-nationwide-ai-enabled-camera-network-data-shows/ (May 27, 2025).

[15] *See* 404 Media*, CBP Had Access to More than 80,000 Flock AI Cameras Nationwide*, https://www.404media.co/cbp-had-access-to-more-than-80-000-flock-ai-cameras-nationwide/ (Aug. 25, 2025).

[16] *See* Electronic Frontier Foundation*, EFF's Investigations Expose Flock Safety's Surveillance Abuses: 2025 in Review*, https://www.eff.org/deeplinks/2025/12/effs-investigations-expose-flock-safetys-surveillance-abuses-2025-review (Dec. 30, 2025).

[17] *See* Flock Safety, *$20 Million Gift Card Scheme Exposed by Video Cameras*, https://www.flocksafety.com/blog/20-million-gift-card-scheme-exposed-by-video-cameras (Mar. 13, 2025); *see also* 404 Media, *Home Depot and Lowe's Share Data From Hundreds of AI Cameras With Cops*, https://www.404media.co/home-depot-and-lowes-share-data-from-hundreds-of-ai-cameras-with-cops/ (Aug. 6, 2025).

[18] *Id*.

---

CLASS ACTION COMPLAINT                                                                                    9

retail locations in California[19] and the statewide saturation of Flock's network of cameras,[20] Defendant is sharing its camera feeds and ALPR data with multiple unknown law enforcement agencies, the exact names of which are known only to Defendant.

50.     Defendant's investors have reportedly asked "the company to review its partnership with surveillance firm Flock Safety and state how its data is used and shared with law enforcement, following reports by an independent media outlet that the vendor's data has been used in Immigration and Customs Enforcement investigations."[21]

51.     Further journalistic investigations have revealed that "in recent years, California has established certain guardrails for ALPR networks owned by police departments and other public entities, including restrictions on how the data can be shared.  The systems are also subject to public records requests.  But those safeguards don't apply to the many private businesses — **including Home Depot, Lowe's, the Southwestern Yacht Club, Fashion Valley mall and homeowners associations** — that give police access to their license plate readers. These private systems effectively serve as a wide-ranging extension of law enforcement's surveillance apparatus — even though the private businesses are not subject to the same public scrutiny and transparency requirements.  A KPBS review of more than 1,500 pages of police records reveals law enforcement agencies in San Diego County have access to dozens of local private Flock camera networks, which include over 150 previously undisclosed license plate readers."[22]

52.     In sum, Flock has a well-documented history of lax data security protocols.  Despite this, Defendant Home Depot has opted, in at least one known instance, to coordinate with Flock to

[19] Home Depot, *U.S. Store Count by State*, https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/documents/q1-2022-store-count-by-state.pdf (last accessed Mar. 5, 2026).

[20] Flock Safety, *SF Takes Historic Step to Solve Crime With 400 LPR Cameras*, https://www.flocksafety.com/blog/sf-takes-historic-step-to-solve-crime-with-400-lpr-cameras (Mar. 21, 2024).

[21] *See* Reuters, *Amid ICE raids, some Home Depot investors want to know how law enforcement uses its surveillance data*, https://www.reuters.com/sustainability/boards-policy-regulation/amid-ice-raids-some-home-depot-investors-want-know-how-law-enforcement-uses-its-2026-01-16/ (Jan. 16, 2026).

[22] *See* KQED, *San Diego Law Enforcement Accessing Private License Plate Readers*, https://www.kqed.org/news/12066349/san-diego-law-enforcement-accessing-private-license-plate-readers (Dec. 8, 2025) (emphasis added).

CLASS ACTION COMPLAINT                                                              10

allow multiple law enforcement agencies open access to its properties' camera feeds and ALPR data.

### IV.    Plaintiff's Particularized Experience

53.    Plaintiff McGinity is acting on his own behalf and on behalf of others similarly situated.

54.    Defendant Home Depot's stores in Martinez, California and Sacramento, California offer parking to consumers.

55.    Defendant Home Depot utilizes, without publicly posted notice or policies, smart technology, specifically ALPR systems to simplify the parking experience and provide security at its Martinez and Sacramento stores. This technology utilizes specialized Flock cameras that capture the license plate number, time, date, and location of all drivers that enter or exit the parking lot connected to the stores.

56.    Home Depot's use of ALPR cameras is not limited to the Martinez and Sacramento locations. Investigation has revealed that at least one other Home Depot location, in Santa Ana, also has Flock ALPR cameras.[23]

57.    Upon information and belief, all of Defendant Home Depot's other stores in California utilize ALPR cameras.

58.    Plaintiff and Class Members had no idea such technology would be tracking them because they do not provide authorization to have their license plates photographed when they enter the parking lots, and no meaningful notice is provided to customers in the form of a publicly posted ALPR policy.

59.    There were no signs in, on, or around the parking lots at the Home Depot stores in Martinez or Sacramento, or at any other California-based Home Depot parking lots, indicating that Defendant Home Depot utilizes ALPRs.

60.    Before December 28, 2025, Home Depot claimed as part of its ALPR policy that it

---

[23] *See* YouTube, *Flock Safety Cameras at Home Depot,*
https://www.youtube.com/watch?v=5Kt24FWOBtU (Nov. 12, 2025).

CLASS ACTION COMPLAINT                                                                    11

would only share its ALPR information to "compl[y] with legal processes," such as subpoenas and warrants.[24]

61.    After December 28, 2025, Home Depot changed its ALPR policies. The new policy admitted that Home Depot would share ALPR data in order to "cooperat[e] with law enforcement related to enforcement of laws and regulations."[25]

62.    Put differently, the December 28, 2025, update to Home Depot's policy was an "after-the-fact" confession of what Home Depot—as revealed through journalistic investigation—had already been known to do: openly share its ALPR data with law enforcement agencies.

63.    Currently, Defendant Home Depot's website also fails to display its ALPR policy in a conspicuous manner. The ALPR policy is a section buried at the bottom of its Privacy & Security Statement.

[24] Wayback Machine, https://web.archive.org/web/20251201204324/https://www.homedepot.com/privacy/privacy-and-security-statement

[25] Wayback Machine, https://web.archive.org/web/20251228014019/https://www.homedepot.com/privacy/privacy-and-security-statement

CLASS ACTION COMPLAINT                                                                                    12

64. First, a user must click the hard-to-distinguish "Privacy & Security Statement" link after scrolling all the way to the bottom of the Home Depot website. The hyperlink is in a small, gray font listed among a handful of other hyperlinks.



65. Then, a user must read down to the fourteenth subject/heading of the Privacy & Security Statement to read the ALPR Usage and Privacy Policy.

66. This means that a user must search through Home Depot's website, scroll to the bottom of the page, which is filled with multiple links that do not call attention to themselves, to access the ALPR policy. This is the opposite of a "conspicuously" posted policy.

67. When individuals visit Home Depot, they have the option of parking in the open parking lots.

68. At no point upon entering or exiting the parking lots do Plaintiff and similarly situated individuals provide authorization to have their license plate information collected, along with their locations, and amount of time they spend at the garage.

69. Plaintiff visited Home Depot stores in Sacramento and Martinez numerous times, and most recently on September 6, 2025. On each of his visits to Home Depot, Plaintiff McGinity arrived at the Home Depot, proceeded to find an open parking space, and then parked his car in the

CLASS ACTION COMPLAINT                                                                13

Home Depot parking lot.  He then entered the Home Depot brick-and-mortar store and, upon his departure, Plaintiff McGinity entered his vehicle in the Home Depot parking lot and drove away.

70.     However, unknown to Plaintiff McGinity, at all times upon parking in the Home Depot lots and upon leaving the lots, Defendant utilized ALPR cameras that transferred to a database Plaintiff's license plate number, location, and amount of time he spent parked in the facility.

71.     Defendants obtained and continue to maintain Plaintiff McGinity's information which includes his license plate number, location at time of entry and exit, and the time he spent parked at the garage.  Thus, the ALPR servers operated by Defendants contained PII[26] of Plaintiff, and similarly situated individuals, and Defendants had a legal duty to protect that PII.

72.     Plaintiff McGinity was injured by Defendants' actions because he faced future identity theft via his ALPR data and suffered a loss of value in his PII and ALPR data.  The data was misused and collected without authorization.

73.     Plaintiff McGinity, unknowingly, was required to provide his PII in order to receive parking services.  If he had known the truth about Defendants' practices, he would not have entrusted his private information to Defendants.

74.     Plaintiff McGinity is very concerned about potential identity theft and fraud and the corresponding consequences of such theft or fraud because of improper storage or sharing of his PII.

75.     Plaintiff McGinity suffered actual injury from having his PII compromised by Defendants including, but not limited to, (a) damage to and diminution of the value of his property interest in his PII, (b) violation of his right to privacy, and (c) imminent and impending injury arising from an increased risk of identity theft and fraud.

76.     Most ALPR data is sent to law enforcement agencies who use the information to

---

[26] "'Personal information' means any information that identifies, relates to, describes, or is capable of being associated with, a particular individual … 'Personal information' does not include publicly available information that is lawfully made available to the general public from federal, state, or local government records." (Civ. Code § 1798.8 (e).)

CLASS ACTION COMPLAINT                                                                                14

locate stolen vehicles and people with outstanding arrest warrants. (*See generally Automated License Plate Readers*, *supra*.) Thus, the ALPR data taken of Plaintiff's vehicle was transmitted to federal and state law enforcement authorities without a search warrant and not for legitimate purposes.

77. Defendant Home Depot does not provide consumers with ample information to discern that their parking lots utilize ALPR systems, nor the gravity of the information obtained and the dangers for which it could be used for.

78. Specifically, Defendant Home Depot does not make available or conspicuous to the public a usage and/or privacy policy about its ALPR cameras.

79. Defendant Home Depot does not provide written notice to the public about its ALPR usage in its lots.

80. Defendants employ the ALPR system for vehicle identification and parking management.

81. Based on information and belief, Plaintiff alleges that at all times within the relevant class period that all acts alleged herein as to Defendant Home Depot was authorized and directed by the remaining defendants who ratified, adopted, condoned, and approved of those acts with full knowledge of the consequences.

82. Based on information and belief, Plaintiff alleges that Defendants agreed to commit the unlawful actions described in this complaint with the intention to defraud and deprive Plaintiff, and similarly situated Class Members of their PII, and share it with unauthorized third parties. Each defendant committed actions in furtherance of this agreement, consequently causing injury to Plaintiff.

## CLASS ALLEGATIONS

83. ***Class Definition***: Pursuant to Code of Civil Procedure § 382, Plaintiff McGinity brings this action on behalf of himself and other similarly situated individuals (the "Class" or "Class Members"), defined as all individuals who, during the class period, had their personally identifiable information collected from ALPR systems at Home Depot's California-based stores

CLASS ACTION COMPLAINT                                                          15

prior to December 28, 2025, without notice, authorization, or consent.

84.    Excluded from the Class are governmental entities, Defendants, and Defendants' affiliates, parents, subsidiaries, employees, officers, or directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

85.    Plaintiff reserves the right to modify or expand the definition of the Class to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

86.    *Numerosity*: Members of the Class are so numerous that their individual joinder herein is impractical.  On information and belief, the Class includes thousands of consumers.  The precise number of Class Members and their identities are unknown to Plaintiff at this time, but it is estimated to be in the thousands.  Class Members may be notified of the pendency of this action by mail, email, and/or publication.

87.    *Ascertainability*: The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein because the rights of each proposed class member were infringed or violated in the same fashion.

88.    ***Commonality and Preponderance***: Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to:

- whether Defendants captured images of Plaintiff and Class Members without authorization;
- whether Defendants conduct violated the Civil Code § 1798;
- whether Plaintiff and Class Members have been harmed and the proper measure of relief; and
- whether Plaintiffs and the Class are entitled to attorney's fees and costs.

89.    *Typicality*: Plaintiff's claims are typical of the claims of the proposed Class he seeks to represent because Plaintiff, like all members of the Class, were induced by the Defendants' lack of notice of the utilization of ALPR systems and subsequently used or accessed parking amenities

CLASS ACTION COMPLAINT                                                                                      16

without knowing that Defendants would collect his PII.  The representative Plaintiff, like all members of the Class, has been injured by the Defendants' misconduct in the very same way as the members of the Class.  Further, the factual bases of the Defendants' misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

90.    *Adequacy*: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

91.    *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish the Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of the Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

92.    Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

93.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Class and will likely retain the benefits of wrongdoing.

CLASS ACTION COMPLAINT                                                                                                    17

94.    Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

**COUNT I**
**Violation of California Civil Code § 1798.90.54**
**(Unauthorized Access and Use of ALPR Information)**
(By Plaintiff, Individually and on Behalf of All Class Members,
Against All Defendants, Including Does 1—100)

95.    Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint as though alleged in this Count.

96.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

97.    Plaintiff Sean McGinity is a natural person and thus, an "individual" pursuant to § 1798.90.54.

98.    Defendant Home Depot is a "person" pursuant to § 1790.90.5(e) because it is a "corporation."

99.    Home Depot and the Does *accessed* "ALPR information" pursuant to § 1798.90.5 because they collected Personal Information or data of Plaintiff and the Class through the use of an "ALPR system" at Home Depot's California-based stores. Specifically, Defendants owned or operated a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

100.    Specifically, Home Depot and the Does used "ALPR information" pursuant to § 1798.90.5 because they: (1) collected Personal Information or data of Plaintiff and the Class through the use of an "ALPR system" at their Martinez and Sacramento stores' parking lots; and (2) have a history of sharing that Personal Information or data with unauthorized or previously undisclosed third parties, as chronicled in the 404 Media, KQED and KPBS investigations (see paragraphs 47-51, *supra*).  Additionally, Defendants owned or operated a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

101. The California legislature has defined a "harm" as "… including but not limited to, unauthorized access to or use of ALPR information…." (Civ. Code § 1798.90.54(a).); *see also Bartholomew v. Parking Concepts, Inc.*, 2026 WL 308163 (Cal. Ct. App. Feb. 5, 2026).

102. Plaintiff McGinity and Class Members at no point provided Home Depot or Does with authorization to *access* his ALPR information pursuant to § 1798.90.54(a), and as such he was harmed by the Defendants actions, in addition to the harms previously alleged.

103. Plaintiff McGinity and Class Members at no point provided Home Depot or the Does with authorization to *use* his ALPR information pursuant to § 1798.90.54(a), and as such he was harmed by the Defendants actions, in addition to the harms previously alleged.

104. Home Depot and the Does' conduct was knowing, willful, and/or reckless when they *accessed* his ALPR information without authorization.

105. Home Depot and the Does' conduct was knowing, willful, and/or reckless when they *used* his ALPR information without authorization.

106. Pursuant to § 1798.90.54(a), Plaintiff is entitled to, and requests "any other sanctions, penalties, or remedies provided by law," and requests pursuant to § 1798.90.54(b) a combination of any one or more of the following:

> (1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500).
>
> (2) Punitive damages upon proof of willful or reckless disregard of the law.
>
> (3) Reasonable attorney's fees and other litigation costs reasonably incurred.
>
> (4) Other preliminary and equitable relief as the court determines to be appropriate.

### COUNT II
**Violation of California Civil Code §§ 1798.90.51(b) and 1798.90.52**
**(Failure to Implement Code Compliant Privacy Policy and Maintain a Record)**
(By Plaintiff, Individually and on Behalf of All Class Members,
Against All Defendants, Including Does 1—100)

107. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint as though alleged in this Count.

---

CLASS ACTION COMPLAINT                                                                 19

108.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Home Depot and the Does.

109.   Pursuant to § 1798.90.51, an ALPR operator shall:

(a) Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.

(b)(1) Implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties.  The usage and privacy policy shall be available to the public in writing, and, if the ALPR operator has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.

(2) The usage and privacy policy shall, at a minimum, include all of the following:

(A) The authorized purposes for using the ALPR system and collecting ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information.  The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(G) The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

110.   Defendants did not maintain a "record of access" in violation of § 1798.90.52, nor did they require that ALPR information only be used for the authorized purpose described in the usage and privacy policy.

111.   Plaintiff Sean McGinity is a natural person and thus, an "individual" pursuant to § 1798.90.54.

CLASS ACTION COMPLAINT                                                                              20

112. Defendant Home Depot is an "ALPR Operator" pursuant to § 1798.90.5(c) because it and those it is comprised of are "involved" in or has some level of "participation" in an ALPR system.

113. The Does are an "ALPR Operator" pursuant to § 1790.90.5(c) because they are "involved" in or have some level of "participation" in an ALPR system.

114. Home Depot and the Does used "ALPR information" pursuant to § 1798.90.5 because they collected Plaintiff's Personal Information or data, as well as the Personal Information or data of the Class Members, by utilizing an "ALPR System" at Home Depot's California-based stores' parking lots. Specifically, Defendants owned or operated a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

115. Defendants do not have a policy compliant with each required element under § 1798.90.51(b)(1) because it fails to ensure or disclose Defendants' use of ALPR information consistent with Plaintiff's right to privacy and civil liberties and does not disclose the authorization necessary to obtain access. Specifically, Defendants do not have a policy compliant with each required element under § 1798.90.51(b)(1) because they: (1) do not have an ALPR policy available to the public in writing in its lots; (2) do not have a conspicuous ALPR policy posted on their Website; (3) do not, as required under § 1798.90.51(b)(1)(E), list the title of the official custodian, or owner, of the ALPR system; and (4) do not, as required under § 1798.90.51(b)(1)(G), list the specific or actual length of time that the ALPR information will be retained.

116. Additionally, Defendants have violated § 1798.90.52, which requires "that ALPR information only be used for the authorized purposes described in the usage and privacy policy[.]" § 1798.90.52(b).

117. On December 28, 2025, Home Depot claimed as part of its online ALPR policy that it would only share its ALPR information to "compl[y] with legal processes," such as subpoenas

CLASS ACTION COMPLAINT                                                              21

and warrants.[27]  Yet, Defendants were known to have shared ALPR information freely—*i.e.*, not as the result of a specific warrant/subpoena—at least as early as March 2025 or August 2025, according to journalistic investigations.

118.    By December 30, 2025, Home Depot updated its ALPR policy to state that it would freely or openly share ALPR information in order to "cooperat[e] with law enforcement related to enforcement of laws and regulations."  But this amendment was too little too late: Home Depot was known, prior to December 30, 2025—including at the time Plaintiff last visited the Home Depot in September 2025—to have already shared ALPR information beyond the circumscribed purposes (subpoenas and warrants) that Home Depot set out in its policy.

119.    Accordingly, at the time Plaintiff last visited the Home Depot in September 2025, Home Depot provided access to ALPR information while failing to "[r]equire that ALPR information only be used for the authorized purposes described in the usage and privacy policy required by subdivision (b) of Section 1798.90.51," in violation of § 1798.90.52(b).

120.    Plaintiff was "harmed" for the reasons incorporated and alleged herein. Each Defendant's conduct was knowing, willful, and/or reckless when they used and accessed his ALPR information without authorization.

121.    Pursuant to § 1798.90.54(a), Plaintiff is entitled to, and requests "any other sanctions, penalties, or remedies provided by law," and requests pursuant to § 1798.90.54(b) a combination of any one or more of the following:

(1)    actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500).

(2)    Punitive damages upon proof of willful or reckless disregard of the law.

(3)    Reasonable attorney's fees and other litigation costs reasonably incurred.

(4)    Other preliminary and equitable relief as the court determines to be appropriate.

---

[27] *See* Wayback Machine Archive dated Dec. 28, 2025, https://web.archive.org/web/20251201204324/https://www.homedepot.com/privacy/privacy-and-security-statement.

CLASS ACTION COMPLAINT                                                                                    22

## COUNT III
**Violation of California Civil Code §§ 1798.90.53(b)(1)**
**(Failure to Implement Code Compliant Privacy Policy and Maintain a Record)**
(By Plaintiff, Individually and on Behalf of All Class Members,
Against All Defendants, Including Does 1—100)

122.    Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint as though alleged in this Count.

123.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Home Depot and the Does.

124.    Pursuant to § 1798.90.53, an ALPR end-user shall:

(a) Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.

(b)(1) Implement a usage and privacy policy in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR end-user has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.

(2) The usage and privacy policy shall, at a minimum, include all of the following:

(A) The authorized purposes for accessing and using ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to access and use ALPR information.  The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws and a process for periodic system audits.

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E) The title of the official custodian, or owner, of the ALPR information responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

---

CLASS ACTION COMPLAINT                                                                 23

(G) The length of time ALPR information will be retained, and the process the ALPR end-user will utilize to determine if and when to destroy retained ALPR information.

125.    Plaintiff Sean McGinity is a natural person and thus, an "individual" pursuant to § 1798.90.54.

126.    In addition to being an ALPR operator as discussed *supra* in Count II, Defendant Home Depot is an "ALPR end-user" pursuant to § 1798.90.5(a) because it and those it is comprised of "access[] or "use[] an ALPR system."

127.    In addition to being ALPR operators as discussed *supra* in Count II, Does are "ALPR end-users" pursuant to § 1790.90.5(a) because they "access[] or "use[] an ALPR system."

128.    Home Depot and the Does had used "ALPR information" pursuant to § 1798.90.5 because they collected Plaintiff's Personal Information or data, as well as the Personal Information or data of the Class Members, by utilizing an "ALPR System" at Home Depot's California-based stores' parking lot. Specifically, Defendants had access to or used a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

129.    Defendants do not have a policy compliant with each required element under § 1798.90.53(b)(1) because it fails to ensure or disclose Defendants' use of ALPR information consistent with Plaintiff's right to privacy and civil liberties and does not disclose the authorization necessary to obtain access. Specifically, Defendants do not have a policy compliant with each required element under § 1798.90.53(b)(1) because they: (1) do not have an ALPR policy available to the public in writing in its lots; (2) do not have a conspicuous ALPR policy posted on their Website; (3) do not, as required under § 1798.90.53(b)(1)(E), list the title of the official custodian, or owner, of the ALPR information; and (4) do not, as required under § 1798.90.51(b)(1)(G), list the specific or actual length of time that the ALPR information will be retained.

130.    Plaintiffs were also "harmed" for the reasons incorporated and alleged herein. Each Defendant's conduct was knowing, willful, and/or reckless when they used and accessed his ALPR information without authorization.

---

CLASS ACTION COMPLAINT                                                                24

131.    Pursuant to § 1798.90.54(a), Plaintiff is entitled to, and requests "any other sanctions, penalties, or remedies provided by law," and requests pursuant to § 1798.90.54(b) a combination of any one or more of the following:

    (1)    actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500).

    (2)    Punitive damages upon proof of willful or reckless disregard of the law.

    (3)    Reasonable attorney's fees and other litigation costs reasonably incurred.

    (4)    Other preliminary and equitable relief as the court determines to be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgement against Defendants, as follows:

(a)    For an order certifying the Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b)    For an order declaring that Home Depot and the Does' conduct violates the statutes referenced herein;

(c)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury but no less than $2,500 for each violation of Civil Code § 1798;

(d)    For prejudgment interest on all amounts awarded;

(e)    For punitive and exemplary damages

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order requiring Home Depot and the Does to undertake a corrective action;

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit; and

(i)    Granting such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

CLASS ACTION COMPLAINT                                                                                          25

Dated: March 6, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____
     Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
Julia K. Venditti (State Bar No. 332688)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com
       jvenditti@bursor.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

26

Electronically Filed Superior Court of CA County of Contra Costa 3/6/2026 1:54 PM By: K. Whitworth, Deputy

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 354768 | *FOR COURT USE ONLY* |
|---|---|---|

NAME: Philip L. Fraietta
FIRM NAME: Bursor & Fisher, P.A.
STREET ADDRESS: 50 Main Street, Suite 475
CITY: White Plains        STATE: NY      ZIP CODE: 10606
TELEPHONE NO.: (914) 874-0708    FAX NO.: (914) 206-3656
EMAIL ADDRESS: pfraietta@bursor.com
ATTORNEY FOR (*name*): Plaintiff Sean McGinity

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA**
 STREET ADDRESS: 725 Court Street
 MAILING ADDRESS:
 CITY AND ZIP CODE: Martinez, CA 94553
  BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
 Sean McGinity v. The Home Depot, Inc.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: C26-00794 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000)    [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

**CM-010**, Page 1 of 3


Processed by Court on 3/11/2026 8:39 AM

**Exhibit A Page 27**

**CM-010**

2.  Is this case complex under rule 3.400 of the California Rules of Court?    [ x ] Yes    [ ] No

If the case is complex, mark the factors requiring exceptional judicial management:

a.  [ ]  Large number of separately represented parties

b.  [ x ]  Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c.  [ x ]  Substantial amount of documentary evidence

d.  [ ]  Large number of witnesses

e.  [ ]  Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f.  [ ]  Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):*

a.  [ x ]  monetary

b.  [ x ]  nonmonetary; declarative or injunctive relief

c.  [ x ]  punitive

4.  Number of causes of action *(specify):* Three

5.  Is this case a class action suit?    [ x ] Yes    [ ] No

6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 6, 2026

Philip L. Fraietta
_____
(TYPE OR PRINT NAME)

▶ *Philip Fraietta* _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

---

Rev. January 1, 2026    **Civil Case Cover Sheet**    **CM-010**, Page 2 of 3



**Exhibit A Page 28**

CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/
Wrongful Death
Uninsured Motorist (46) *(if the case involves
an uninsured motorist claim subject to
arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/
environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians &
Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g.,
assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest)
*(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not
medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not
unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff
*(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book
accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord-tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs,
check this item; otherwise, report as
Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case
Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case
involves an Employment Development
Department decision, check this item
instead of Wrongful Termination or Other
Employment)*

**Provisionally Complex Civil Litigation (Cal.
Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication
(47)
Insurance Coverage Claims *(arising from
provisionally complex case type listed
above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid
taxes)*
Petition/Certification of Entry of Judgment
on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief
Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-
tort/non-complex)*
Other Civil Complaint *(non-tort/non-
complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

---

Rev. January 1, 2026

**Civil Case Cover Sheet**

**CM-010**, Page 3 of 3

**For your protection and privacy, please press the Clear
button after you have printed the form.**

**Print**     **Save**     **Clear**

**Exhibit A Page 29**

Electronically Filed Superior Court of CA County of Contra Costa 3/6/2026 1:54 PM By: K. Whitworth, Deputy

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE HOME DEPOT, INC., and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SEAN MCGINITY, individually and on behalf of all other persons similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* Superior Court of California | *(Número del Caso):*  C26-00794 |
| County of Contra Costa, 725 Court Street, Martinez, CA 94553 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Philip L. Fraietta, Bursor & Fisher, P.A., 50 Main Street, Suite 475, White Plains, NY 10606, Tel: (914) 874-0710

| DATE: | | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)*  3/6/2026 1:54 PM | | *(Secretario)*  /s/ K. Whitworth | | *(Adjunto)* |

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* The Home Depot, Inc.
   under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
| Judicial Council of California | | *www.courts.ca.gov* |
| SUM-100 [Rev. July 1, 2009] | | |

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

 

Processed by Court on 3/11/2026 8:39 AM

**Exhibit A Page 30**

Electronically Filed Superior Court of CA County of Contra Costa 3/16/2026 2:20 PM By: L. Smith, Deputy

| | FOR COURT USE ONLY |
|---|---|
| *Attorney or Party without Attorney:*<br>Philip L. Fraietta (SBN 354768)<br><br>Bursor & Fisher, P.A.<br>50 Main Street Suite 475<br>White Plains, NY 10606<br>　Telephone No:　(925) 300-4455<br>　Attorney For:　Plaintiff Sean McGinity | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA | |

| | |
|---|---|
| PLAINTIFF / PETITIONER:　Sean McGinity<br>DEFENDANT / RESPONDENT:　The Home Depot, Inc. | CASE NUMBER:<br>C26-00794 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>4247 Home Depot ALPR |

1.　*At the time of service I was at least 18 years of age and not a party to this action.*

2.　I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET

3.　a.　*Party served:*　THE HOME DEPOT, INC.
　　b.　*Person served:*　Lynanne Gares, Authorized to Accept Service for Corporation Service Company, Agent for Service of Process

4.　*Address where the party was served:*　251 Little Falls Drive, Wilmington, DE 19808

5.　*I served the party:*
　　a. **by personal service.**　I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Fri, Mar 13 2026 (2) at *(time)*: 09:40 AM
　　(1)　[ X ]　(business)
　　(2)　[　]　(home)
　　(3)　[　]　(other) :

6.　The "Notice to the Person Served" (on the summons) was completed as follows:
　　a.　[　]　as an individual defendant.
　　b.　[　]　as the person sued under the fictitious name of *(specify)*:
　　c.　[　]　as occupant.
　　d.　[ X ]　On behalf of *(specify)*:　THE HOME DEPOT, INC.
　　　　under the following Code of Civil Procedure section:
　　　　[ X ]　416.10 (corporation)　　　　　　　　　　[　]　415.95 (business organization, form unknown)
　　　　[　]　416.20 (defunct corporation)　　　　　　　[　]　416.60 (minor)
　　　　[　]　416.30 (joint stock company/association)　[　]　416.70 (ward or conservatee)
　　　　[　]　416.40 (association or partnership)　　　　[　]　416.90 (authorized person)
　　　　[　]　416.50 (public entity)　　　　　　　　　　[　]　415.46 (occupant)
　　　　[　]　other:

| | | | |
|---|---|---|---|
| **FL**<br>FIRSTLEGAL | Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007 | **PROOF OF<br>SERVICE<br>SUMMONS** | *15419575*<br>*(6299585)*<br>Page 1 of 2 |

Processed by Court on 3/17/2026 10:14 AM

**Exhibit A Page 31**

| Plaintiff: Sean McGinity | Case Number: |
|---|---|
| Defendant: The Home Depot, Inc. | C26-00794 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.  **Person who served papers**
    a.  Name:                  William Besco
    b.  Address:               **FIRST LEGAL**
                               1939 HARRISON STREET, SUITE 818
                               OAKLAND, CA 94612
    c.  Telephone number:      (415) 626-3111
    d.  The fee for service was:    296.00
    e.  I am:
        (1)  [X]  not a registered California process server.
        (2)  [ ]  exempt from registration under Business and Professions Code section 22350(b).
        (3)  [ ]  a registered California process server:
             (i)   [ ] owner  [ ] employee  [ ] independent contractor
             (ii)  Registration No:
             (iii) County:

8.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

03/13/2026                           William Besco
_____                        _____
*(Date)*                             *William Besco*

Judicial Council Form POS-010           **PROOF OF**              *15419575*
Rule 2.150.(a)&(b) Rev January 1, 2007   **SERVICE**              *(6299585)*
                                        **SUMMONS**               Page 2 of 2

**Exhibit A Page 32**