JONES DAY
Darren K. Cottriel, Bar No. 184731
dcottriel@jonesday.com
Ann T. Rossum, Bar No. 281236
atrossum@jonesday.com
JoeAl Akobian, Bar No. 346801
jakobian@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, California 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

Amanda Fitzsimmons, Bar No. 258888
amandafitzsimmons@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121.3134
Telephone: +1.858.314.1200
Facsimile: +1.844.345.3178

Attorneys for Defendants
HOME DEPOT U.S.A., INC. and
THE HOME DEPOT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: HOME DEPOT ALPR LITIGATION

Case No. 3:26-cv-03103-SK

Related Cases
Case No. 3:26-cv-03967-SK
Case No. 3:26-cv-04122-SK

Assigned for all purposes to Magistrate Judge Sallie Kim

**DEFENDANTS HOME DEPOT U.S.A., INC.'S AND THE HOME DEPOT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Concurrently filed with Request for Judicial Notice, Declaration of Darren K. Cottriel, Exhibits, Proposed Order]*

Date: January 11, 2027
Time: 9:30 a.m.
Place: Courtroom C, 15th Floor

First Amended Compl. Filed: September 14, 2026

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on January 11, 2027, at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Sallie Kim, in Courtroom C, 15th Floor, Defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. (collectively, "Home Depot") will and hereby do move to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint for failure to state a claim upon which relief can be granted. Home Depot brings this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice, the Declaration of Darren K. Cottriel and exhibits thereto, any reply memorandum Home Depot may file, any arguments of counsel, and any other matter that the Court deems appropriate.

Dated: October 29, 2026

Respectfully submitted,

JONES DAY

*/s/ Darren K. Cottriel*
Darren K. Cottriel

Attorneys for Defendants
HOME DEPOT U.S.A., INC. and
THE HOME DEPOT, INC.

# TABLE OF CONTENTS

**Page**


INTRODUCTION ... 1
STATEMENT OF THE ISSUES TO BE DECIDED ... 1
FACTUAL ALLEGATIONS ... 2
A. California's Automated License Plate Recognition Act. ... 2
B. Home Depot and Its Use of an ALPR System. ... 3
C. Home Depot's Publicly Posted ALPR Policy. ... 3
D. Plaintiffs' Allegations. ... 4
STANDARD ... 4
ARGUMENT ... 5
I. PLAINTIFFS' ALPR ACT CLAIMS FAIL ... 5
A. Plaintiffs Lack Statutory Standing Under the ALPR Act. ... 5
B. Count I's "Unauthorized Use" Theory Fails. ... 12
C. Counts II and III Independently Fail Because Home Depot's ALPR Policy Satisfies Every Statutory Element. ... 15
D. Home Depot Maintains Adequate Access Records. ... 20
E. Plaintiffs' Claims of Inadequate Security Fail. ... 20
II. COUNT IV—INVASION OF PRIVACY (CAL. CONST. ART. I, § 1) FAILS ... 21
III. COUNT V—INTRUSION UPON SECLUSION FAILS ... 22
IV. COUNT VI—UCL (CAL. BUS. & PROF. CODE § 17200 ET SEQ.) FAILS ... 23
V. COUNT VII—NEGLIGENCE AND NEGLIGENCE PER SE FAIL ... 24
CONCLUSION ... 25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024) ....... 21
*Aas v. Superior Ct.*, 24 Cal. 4th 627 (2000) ....... 24
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....... passim
*Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438 (2026) ....... passim
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....... 4
*Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456 (2013) ....... 5
*Carpenter v. United States*, 585 U.S. 296 (2018) ....... 21
*City of Los Altos v. Barnes*, 3 Cal. App. 4th 1193 (1992) ....... 21
*Craig v. Cap. One, N.A.*, No. CV 17-3788, 2018 WL 5857987 (C.D. Cal. Apr. 10, 2018) ....... 23
*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ....... 24
*Doe v. Chao*, 540 U.S. 614 (2004) ....... 6
*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....... 8
*Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ....... 23
*Gamevice, Inc. v. Nintendo Co.*, No. 18-cv-01942, 2018 WL 5310792 (N.D. Cal. Aug. 6, 2018) ....... 18
*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....... 8, 9
*Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008) ....... 23
*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....... 23
*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ....... 22

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....22
*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....21
*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....22
*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....24
*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ....8
*Joseph v. Am. Airlines, Inc.*,
No. 25-cv-2887-LL-DEB, 2026 WL 2087498 (S.D. Cal. July 20, 2026) ....24
*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....24
*Kohut v. Martin*,
No. 1:22-cv-00472, 2026 WL 926250 (E.D. Cal. Apr. 6, 2026) ....25
*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ....23
*Mata v. Digital Recognition Network, Inc.*,
121 Cal. App. 5th 1075 (2026) .... passim
*McGinity v. Reimagined Parking LLC*,
No. 26-cv-02760, 2026 WL 2322918 (N.D. Cal. Aug. 5, 2026) ....11
*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ....8, 9, 24
*Navarro v. Ski Data*,
No. 2:20-cv-07370, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) .... passim
*Peatrowsky v. Persolve*,
No. 2:12-cv-00935, 2014 WL 1215061 (D. Nev. Mar. 24, 2014) ....24
*People v. Strider*,
177 Cal. App. 4th 1393 (2009) ....22
*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021) ....8
*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....25
*Rojas v. Regents of the Univ. of Cal.*,
No. 26CV-03182, 2026 WL 3094679 (Cal. Super. Ct. Merced Cnty. Sept. 28, 2026) ....11, 12
*Salazar v. Golden State Warriors*,
No. C-99-4825, 2000 WL 246586 (N.D. Cal. Feb. 29, 2000) ....22, 23
*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....24

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) .......... 24

*Stephens v. Cnty. of Tulare*, 38 Cal. 4th 793 (2006) .......... 15

*Williams v. California*, 764 F.3d 1002 (9th Cir. 2014) .......... 16

*Zaragoza v. Wal-Mart Stores*, No. C-94-3627, 1995 WL 630012 (N.D. Cal. Oct. 20, 1995) .......... 25

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .......... passim

Cal. Bus. & Prof. Code § 17204 .......... 23

Cal. Civ. Code §§ 1798.90.5–1798.90.55 .......... passim

Cal. Civ. Proc. Code § 1858 .......... 15

Cal. Evid. Code § 669 .......... 24, 25

Cal. Veh. Code § 5200 .......... 3, 8

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 4

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 323 .......... 25

Restatement (Second) of Torts § 324A .......... 25

## INTRODUCTION

California's Automated License Plate Recognition Act ("ALPR Act") is a transparency statute—not a surveillance ban, a privacy tort, or a license for plaintiffs to convert every drafting quibble into a $2,500 payday. The Legislature could have prohibited private use of ALPR technology, restricted sharing with law enforcement, or required individualized notice and consent. As to private entities, it did none of those things. It simply required covered entities to write down, in a public policy, what they do with the data they collect. Home Depot did exactly that.

Plaintiffs have now pleaded twice and failed twice. They still do not allege that Home Depot's ALPR cameras were hacked, that anyone used or misused their data, that law enforcement stopped or detained them, or that any Plaintiff was ever identified—let alone misidentified. And they still do not allege that any Plaintiff ever looked for, let alone read, Home Depot's ALPR Policy. Their only answer is that they would have read it had Home Depot posted it in the parking lot—a point-of-collection requirement that appears nowhere in the statute. Strip away the allegations about non-party Flock Safety and its other customers, and what remains is a quibble over the wording of a written policy Home Depot indisputably had and Plaintiffs never read.

Every claim in the First Amended Consolidated Class Action Complaint ("FAC") fails. Plaintiffs' ALPR Act claims fail because they cannot plead the actual harm the statute requires—a defect that alone disposes of all three ALPR counts—and, independently, because Home Depot's publicly posted policy addresses every category of information the statute requires. Their constitutional and common-law privacy claims fail because a license plate in an open parking lot carries no reasonable expectation of privacy. Their unfair competition and negligence claims fail for want of any cognizable injury. Seven counts, one common defect: no harm, no violation, no case. Because amendment is futile, the FAC should be dismissed with prejudice.

## STATEMENT OF THE ISSUES TO BE DECIDED

Home Depot maintained a publicly available ALPR policy addressing every category the ALPR Act requires. Plaintiffs—who admittedly never read or relied on the policy—seek to hold Home Depot liable for its supposed lack of detail, without alleging that anyone accessed, misused, or breached their data. The issues presented are: (1) whether Plaintiffs fail to allege cognizable

"harm" as required by the ALPR Act, which limits its private right of action to individuals "harmed by a violation"; and (2) whether the FAC states a valid claim on any of its seven causes of action.

## FACTUAL ALLEGATIONS[1]

### A. California's Automated License Plate Recognition Act.

The heart of Plaintiffs' claims is California's ALPR Act—a modest transparency measure enacted in 2015 to "put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users." RJN, Ex. A at 5. The Legislature stopped there: it did not ban private ALPR use or prohibit private entities from sharing ALPR data with law enforcement. "[T]he ALPR statute does *not* restrict or place limitations on a *private* entity's collection or use of ALPR information." *Mata v. Digital Recognition Network, Inc.*, 121 Cal. App. 5th 1075, 1084 (2026). Nor does it require notice or consent for collection of ALPR information. *Id.* at 1090 n.12. In short, the statute "vests private entities that collect and use ALPR information with wide leeway to determine what to do with this data." *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438, 449 (2026).

The ALPR Act contains three primary requirements. *First*, ALPR "operators" and "end-users" must maintain "reasonable" security measures "to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code §§ 1798.90.51(a), 1798.90.53(a).

*Second*, ALPR operators and end-users must implement "a usage and privacy policy," in a publicly available writing and on their website. The policy must address seven categories of information: (a) the "authorized purposes" for using ALPR systems or information; (b) a "description of the job title or other designation of the employees" who are authorized to use the ALPR information; (c) a description of how the ALPR system is monitored; (d) the purposes of, process for, and restrictions on, the sale, sharing, or transfer of information to other persons; (e) the title of the official custodian or owner (of the ALPR system for *operators* and of the ALPR information for *end-users*); (f) a description of the reasonable measures used to ensure the accuracy of ALPR

[1] For purposes of this Motion, Home Depot assumes the truth of Plaintiffs' allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

information; and (g) the "length of time" that ALPR information will be retained. *Id.* §§ 1798.90.51(b)(2), 1798.90.53(b)(2).

*Third*, an "operator"—but not an "end-user"—must maintain a record if it accesses or provides access to ALPR information and must "[r]equire that ALPR information only be used for the authorized purposes described in the usage and privacy policy." *Id.* § 1798.90.52.

The ALPR Act provides a private right of action: "[A]n individual *who has been harmed* by a violation of this title, including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system, may bring a civil action in any court of competent jurisdiction against a person who knowingly caused the harm." *Id.* § 1798.90.54(a) (emphasis added). The ALPR Act also permits recovery of actual damages, but not less than $2,500 in liquidated damages, punitive damages, fees, and equitable relief. *Id.* § 1798.90.54(b)(1)–(4).

**B. <u>Home Depot and Its Use of an ALPR System.</u>**

Home Depot operates 233 retail stores across California, each with parking lots open to the public. FAC ¶¶ 10, 99. Like countless retailers, Home Depot uses ALPR technology for routine business purposes—"fraud prevention, security, and asset protection." *Id.* ¶¶ 130(a), 367. Home Depot does not build or operate the ALPR technology it uses or host the data it collects; it contracts with Flock Safety ("Flock"), which "manufactures the cameras, operates the software, and maintains the database in which the ALPR information resides." *Id.* ¶¶ 7, 100, 135. The cameras are stationary fixtures in parking lots. *Id.* ¶¶ 11, 107. Plaintiffs allege the cameras capture "Vehicle Tracking Data"—license plate number, make, model, color, and distinguishing features, along with the date, time, and location of each scan. *Id.* ¶ 4. California law requires vehicles to display license plates, Cal. Veh. Code § 5200, so plates are visible to anyone—including a stationary camera—in a public space.

**C. <u>Home Depot's Publicly Posted ALPR Policy.</u>**

Plaintiffs do not dispute that Home Depot maintains an ALPR-specific usage and privacy policy on its website, homedepot.com (the "ALPR Policy"). FAC ¶¶ 119, 144; Ex. A at 25–26. That policy provides a contact email for questions and, as detailed below, addresses every enumerated transparency requirement in the ALPR Act. *Id.* Ex. A at 26.

At all relevant times, the ALPR Policy disclosed authorized purposes that include sharing

ALPR data with law enforcement. The company's broader Privacy and Security Statement—incorporated by reference into all versions of the ALPR Policy—further disclosed that Home Depot may share license plate numbers with "[l]aw enforcement, public and government authorities and other entities as we deem reasonably necessary to comply with law, support investigations, and protect the rights and property of you, us, and others." *Id.* Ex. A at 14. Both the ALPR Policy and the Privacy and Security Statement are incorporated by reference in the FAC. *Id.* ¶¶ 121, 144; Ex. A.

### D. Plaintiffs' Allegations.

Plaintiffs are nine individuals whose vehicles' license plates were allegedly captured by ALPR cameras at California Home Depot stores during the alleged class period. FAC ¶¶ 24–32, 196–310. Tellingly, Plaintiffs do not allege that Home Depot lacked an ALPR policy; they allege only that it was not detailed enough. Their theory rests on three asserted deficiencies: a lack of specificity regarding (1) the system custodian or owner, (2) the retention period for ALPR data, and (3) the circumstances of law-enforcement sharing. *Id.* ¶¶ 17, 143, 153. Yet—even after amending—no Plaintiff alleges ever reading the ALPR Policy, attempting to review it, relying on it, or even using its contact channel to ask a question. *See generally id*. They allege only that they "would have read" the ALPR Policy had Home Depot disclosed it at the point of collection. *E.g.*, *id.* ¶¶ 201, 214, 227.

Plaintiffs bring seven claims. Three arise under the ALPR Act: (1) unauthorized access and use of ALPR information (Cal. Civ. Code § 1798.90.52(b)); (2) failure to implement a compliant policy and maintain a record of access as an "operator" (*id.* §§ 1798.90.51(b), 1798.90.52); and (3) failure to implement a compliant policy as an "end-user" (*id.* § 1798.90.53(b)(1)). FAC ¶¶ 318–44. The rest are: (4) invasion of privacy under the California Constitution; (5) intrusion upon seclusion; (6) unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); and (7) negligence and negligence per se. *Id.* ¶¶ 345–79.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must plead "factual content" supporting a "reasonable inference that [Defendants are] liable for the misconduct

alleged." *Id.* "Naked assertions devoid of further factual enhancement" will not do. *Id.* (cleaned up).

**ARGUMENT**

## I. PLAINTIFFS' ALPR ACT CLAIMS FAIL

Plaintiffs' ALPR Act claims fail for multiple independent reasons, any one of which necessitates dismissal. Most fundamentally, Plaintiffs lack statutory standing because they allege no cognizable harm—a defect that alone disposes of all three ALPR counts.[2] Independently, Count I fails because Home Depot is not an "ALPR operator." And even if it were, Count I still fails because the ALPR Policy authorized law-enforcement sharing. Counts II and III independently fail because the Policy satisfies every statutory disclosure element.

### A. Plaintiffs Lack Statutory Standing Under the ALPR Act.

#### 1. The ALPR Act requires actual harm beyond a bare statutory violation.

Plaintiffs' ALPR Act claims founder at the threshold because they lack statutory standing to sue. The ALPR Act confers a private right of action only on "an individual who has been *harmed* by a violation of this title." Cal. Civ. Code § 1798.90.54(a) (emphasis added). It demands actual harm—and harm of a particular kind, as illuminated by the statute's examples: "unauthorized access or use of ALPR information or a breach of security of an ALPR system." *Id.* Plaintiffs allege none of those things. No one accessed their data without authorization. No one misused it. No security was breached. What Plaintiffs claim is that Home Depot's policy omits certain details. That is a grievance about paperwork, not harm.

Under California law, "[t]he prerequisites for standing to assert statutorily-based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466 (2013). The ALPR Act authorizes suit by "an individual who has been harmed by a violation"—not any person who identifies a "violation" of the Act. Cal. Civ. Code § 1798.90.54(a). The plain text requires each plaintiff to "demonstrate actual harm that arises from the violation." *Mata*, 121 Cal. App. 5th at 1094.

---

[2] Plaintiffs' failure to plead harm also disposes of the ALPR Act's separate requirement that the defendant "knowingly caused the harm." Cal. Civ. Code § 1798.90.54(a). Plaintiffs infer knowledge based on the allegation that Home Depot's privacy team "knew these elements were required, because the statute's text is unambiguous." FAC ¶ 177. That reasoning, however, would make every entity that drafts a policy a knowing violator of any element a plaintiff later deems inadequate.

The statute's illustrative harms confirm the point. By extending the private right of action to harm "including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system" (Cal. Civ. Code § 1798.90.54(a)), the Legislature defined the genus of cognizable harm. Under the *ejusdem generis* canon, the general phrase "harmed by a violation" must be read in light of the specific examples that follow it. *Mata*, 121 Cal. App. 5th at 1094 (citation omitted). Unauthorized access, unauthorized use, and a security breach are all "examples of actual, not abstract, harm." *Id.* Their inclusion "indicates that more than just a violation is required, as there would be no need to provide examples if *any* violation was sufficient." *Id.* at 1093 (citation omitted).

Senate Bill 34 originally authorized suit by a person "harmed by a violation . . . against a person who knowingly caused that violation." *See Bartholomew*, 118 Cal. App. 5th at 447–48. The enacted version replaced "that violation" with "the harm"—and added the statute's three specific harm examples in the same stroke. *See id.*; *Navarro v. Ski Data*, No. 2:20-cv-07370, 2022 WL 18280359, at *6 (C.D. Cal. Dec. 7, 2022). Those "two changes made in tandem indicate a legislative intent to require harm beyond a mere statutory violation." *Bartholomew*, 118 Cal. App. 5th at 448.[3]

**2. <u>Plaintiffs' alleged injuries do not constitute "harm" under the ALPR Act.</u>**

Plaintiffs advance five theories of harm: (1) "concern and discomfort" about the potential exposure of their ALPR data to federal, out-of-state, and immigration law enforcement agencies (*e.g.*, FAC ¶ 206(c)); (2) a "foreseeable risk" of law enforcement action arising from a misread of ALPR data (*e.g.*, *id.* ¶ 206(d)); (3) "economic" harm based on alleged diminution of the value of their Vehicle Tracking Data (*e.g.*, *id.* ¶¶ 110–18, 206(e)); (4) loss of a "right to know" which entities collect their data and what they do with it (*e.g.*, *id.* ¶ 206(b)); and (5) a purported invasion of privacy in their movements and travel patterns (*e.g.*, *id.* ¶ 206(a)). Every one of them fails.

[3] Plaintiffs cannot invoke the statute's liquidated damages floor to sidestep the harm requirement. Section 1798.90.54(b)(1) authorizes "[a]ctual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500)"—presupposing actual damages as a predicate. *See Doe v. Chao*, 540 U.S. 614 (2004). Plaintiffs read *Bartholomew*'s observation that the liquidated damages provision shows harm need not be monetary as confirmation that the failure to post a compliant policy is, "by itself," actionable. FAC ¶ 186. It is not. That harm need not be monetary says nothing about whether harm exists at all, and treating the violation as the harm itself would erase the very distinction the Legislature drew when it amended Senate Bill 34, as Plaintiffs elsewhere concede *Mata* recognized. *See* FAC ¶ 334. And whatever the floor means, it cannot help Plaintiffs, who never looked for the policy and so suffered no harm at all. *See infra* Section I.A.2.d.

**a. Subjective concern and discomfort.**

Plaintiffs' theory that "concern and discomfort" about the sharing of their ALPR data amounts to actual harm is squarely foreclosed by *Mata*, which held that a plaintiff's "subjective belief that his privacy has been invaded by the collection and storage of his data" does not constitute harm under the ALPR Act. 121 Cal. App. 5th at 1082; *see also id.* at 1098. The FAC illustrates why. Each Plaintiff recites, in identical boilerplate, "concern and discomfort regarding the exposure" of his or her ALPR data to "federal, out of state, and immigration enforcement agencies." *E.g.*, FAC ¶¶ 206(c), 231(c), 295(c). But no Plaintiff alleges that any such agency ever searched, accessed, or used his or her data, gives any reason he or she would be of interest to such an agency, or explains why sharing with those agencies, as opposed to local law enforcement, would cause any concern at all. Instead, the FAC borrows its concern from the experiences of others. *Id.* ¶¶ 157–66, 190–91. Generalized unease about what certain agencies might do with other people's data is precisely the "subjective belief" *Mata* rejected. And if professed concern sufficed, the harm requirement would vanish: any plaintiff aware of a statutory violation can profess some "concern" about it.

Moreover, Plaintiffs' alleged concern rests on Home Depot linking their identities to their license plate data. But the most that certain Plaintiffs allege is that, on "information and belief," their purchases made their ALPR data "capable of being associated with [their] identity"—not that any linkage actually occurred. FAC ¶¶ 203, 216, 241, 254, 266, 279, 292, 305. And Plaintiffs plead no facts supporting even that capability—such as a system capable of tracking a customer from the parking lot to the register. *Iqbal* forbids such conjecture. 556 U.S. at 678.[4]

**b. Speculative risk of misidentification.**

Plaintiffs' next theory—based on an alleged "foreseeable risk" of a "wrongful stop, detention, or other law enforcement action" because of a "Flock ALPR misread"—fares no better. *E.g.*, FAC ¶ 206(d). Not a single Plaintiff alleges an actual misread, let alone a misidentification or any consequence from one. A speculative possibility is too conjectural to "satisfy the statu[t]e's requisite

[4] Plaintiffs concede that Flock cameras do not identify individuals. *See* FAC ¶ 4 (identifying alleged data captured by Flock cameras); *see also* Rights & Safeguards, Flock Safety, https://www.flocksafety.com/trust/rights-safeguards (last visited Oct. 9, 2026) ("Flock ALPR does not identify drivers or passengers. ALPR system searches are based on vehicle details, not faces.").

showing of actual harm caused by a knowing violation." *Navarro*, 2022 WL 18280359, at *8.

**c. The data value theory.**

Plaintiffs' economic harm theory rests on the purported "diminished" value of their license plate data. *See* FAC ¶ 115. To plead economic injury, plaintiffs must allege the existence of a market for their data and the impairment of the ability to participate in that market. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (concluding plaintiffs failed to "adequately plead that they lost money or property in the form of the value of their [data]" where they "did not allege they ever attempted or intended to participate in this market"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1054 (S.D. Cal. 2023) (citing *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022)) (addressing UCL statutory standing); *accord Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020) (addressing damages element of state-law claims), *aff'd*, 845 F. App'x 613, 614–15 (9th Cir. 2021). Plaintiffs plausibly allege neither.

*First*, Plaintiffs do not plausibly allege a market for their license plate data—at least, not one *they* can access. They allege that "data brokers collect, *aggregate*, and sell consumer data," and that Flock fuses vehicle data with information from "data brokers, credit-reporting agencies, and other external sources." FAC ¶¶ 111 (emphasis added), 113, 117. But they do not allege any market exists in which individuals can sell their own license plate data, information the law requires them to display publicly. Cal. Veh. Code § 5200. Even if Flock or Home Depot aggregated and sold Plaintiffs' data—and nothing suggests either did—"[i]t strains credulity to believe that" any interested buyer "would have gone to each individual [Home Depot customer] and compensated him or her for access to his or her personal information." *Moore*, 83 Cal. App. 5th at 539–40 (citation omitted); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088–91 (N.D. Cal. 2023) (dismissing data value theory where plaintiffs failed to allege how they "could and would participate in a legitimate market").

*Second*, and independently, Plaintiffs do not plausibly allege that they were thwarted from participating in that nonexistent market. The allegation that "[t]he economic value of Plaintiffs' Vehicle Tracking Data . . . has been diminished," FAC ¶ 118, is a legal conclusion entitled to no weight. *See Moore*, 83 Cal. App. 5th at 538. Plaintiffs do "not allege they ever attempted or intended

to participate in this market." *Id.* Like the plaintiff in *Greenley*, Plaintiffs do "not allege any opportunity through which [they] might" profit from their data. *Greenley*, 684 F. Supp. 3d at 1054.

**d. The "right to know" theory.**

Invoking *Bartholomew*, Plaintiffs allege Home Depot's ALPR Policy violated their "'right to know' which entities are collecting their data and how it is being used." FAC ¶ 323. This harm theory fails for three independent reasons: (1) the statutory text does not support it; (2) *Bartholomew* expressly declined to reach it; and (3) *Mata* considered and rejected it.

*First*, the statutory text. Section 1798.90.54(a) says nothing of a "right to know." It authorizes suit only by "an individual who has been harmed by a violation," and illustrates harm with examples of actual data compromise. Cal. Civ. Code § 1798.90.54(a). Plaintiffs' theory treats the purported violation itself—an allegedly inadequate policy—as the harm, erasing the distinction the Legislature drew when it amended Senate Bill 34 to require harm "caused" by a violation. Plaintiffs cannot amend the statute by relabeling their grievance.

*Second*, *Bartholomew* provides no refuge, as it involved the collection of ALPR information with no usage and privacy policy at all. 118 Cal. App. 5th at 449–50. On those facts, the court reasoned that collection of ALPR data "without implementing and making public the statutorily required policy harms these individuals by violating this right to know." *Id.* at 449. But the court went no further. In a footnote Plaintiffs themselves cite, FAC ¶¶ 146, 149, 342, it declined to decide "whether collecting and maintaining ALPR information with a usage and privacy policy that does not include every component identified in section 1798.90.51, subdivision (b)(2) would also cause such harm." *Bartholomew*, 118 Cal. App. 5th at 449 n.10. That reserved question is this case. Unlike the defendant in *Bartholomew*, Home Depot has a policy.

Faced with this conundrum, Plaintiffs now rely on Home Depot's December 29, 2025 revision to the policy, alleging that the period before the revision is "governed by *Bartholomew*'s holding rather than by its reservation." FAC ¶¶ 127–28. This is a repackaged version of the original theory Plaintiffs abandoned after Home Depot's motion. Plaintiffs concede that Home Depot had a published ALPR Policy throughout that period (*id.* ¶¶ 123–24), which places the pre-revision period squarely within *Bartholomew*'s reservation, not its holding. And law-enforcement sharing was

disclosed throughout that period. At all times, the Privacy and Security Statement incorporated by reference in the ALPR Policy disclosed that Home Depot may share license plate numbers with "[l]aw enforcement, public and government authorities and other entities as we deem reasonably necessary to comply with law, support investigations, and protect the rights and property of you, us, and others." *Id.* Ex. A at 14. The pre-revision ALPR Policy itself likewise disclosed sharing ALPR information outside Home Depot to "ensur[e] the safety and security of our customers, associates and third parties," to "protect[] our rights and property," and to "compl[y] with legal processes." *Id.* ¶ 124. It is obvious that law enforcement may be involved in stopping a theft or protecting a customer or associate. Plaintiffs effectively admit this by alleging that a reasonable reader would have understood Home Depot collected license plates "to catch shoplifters." *Id.* ¶ 130(a). The revision simply made explicit in the ALPR Policy what was already disclosed in the Privacy and Security Statement. Plaintiffs' complaint is about wording or placement, not the absence of a disclosure—let alone the absence of a policy, the only circumstance *Bartholomew* addressed.

*Third*, *Mata* forecloses the "right to know" theory on these facts. Expressing doubt about the "right to know" theory of harm, *Mata* held that "[e]ven under the rationale of *Bartholomew*'s 'right to know' harm, none of these alleged deficiencies show that Mata's 'right to know' has been harmed" because "Mata concedes he has never gone to DRN's website to look for, let alone review, DRN's usage and privacy policy." 121 Cal. App. 5th at 1100. So too here: no Plaintiff alleges ever visiting homedepot.com, looking for the ALPR Policy, or reading it. Plaintiffs' insistence that each omission deprived them of the chance to make various decisions about their conduct, FAC ¶¶ 143, 147, 152, changes nothing; an omission can deprive a person only of information that person sought.

Plaintiffs' effort to distinguish *Mata* fails. They argue that the *Mata* policy was in "actual and literal compliance" and the plaintiff challenged only its sincerity, whereas Home Depot's policy omits required information. *Id.* ¶ 148. But the *Mata* plaintiff also challenged the policy's adequacy, its conspicuousness, and the defendant's security. 121 Cal. App. 5th at 1098. The court held that "none of these alleged deficiencies" harmed his right to know because he never looked. *Id.* at 1100. That reasoning applies whatever the deficiency: a plaintiff who never sought the policy cannot have been deprived of anything it omitted—which is why it does not matter that, in Plaintiffs' view, the

policy "would not have supplied that information at any event." *E.g.*, FAC ¶¶ 215, 240, 304.

Nor can Plaintiffs excuse their failure to look by faulting where Home Depot posted its policy. Plaintiffs allege they had "no reasonable means of becoming aware" of the ALPR system, *e.g.*, *id.* ¶¶ 200, 213, 302, because the policy appeared on homedepot.com "and nowhere else," with "no notice at the point of collection," *id.* ¶¶ 131, 143. But the ALPR Act requires only that the policy be posted "conspicuously on that Internet Web site." Cal. Civ. Code §§ 1798.90.51(b)(1), 1798.90.53(b)(1). It "does not require an ALPR operator (or end-user) to provide notice or obtain consent for the collection and use of ALPR information." *Mata*, 121 Cal. App. 5th at 1090 n.12. Plaintiffs concede the policy was posted on the website. FAC ¶¶ 143–44. Omitting a disclosure the Legislature never required harms no one. And the placards Home Depot allegedly installed after this suit was filed, *id.* ¶¶ 132–41, are beside the point: no Plaintiff alleges ever seeing one. *E.g.*, *id.* ¶¶ 225, 237, 301.

Plaintiffs' theory fares no better under *McGinity v. Reimagined Parking LLC*, No. 26-cv-02760, 2026 WL 2322918 (N.D. Cal. Aug. 5, 2026). *See* FAC ¶¶ 150–51, 334. *McGinity* is a brief minute order that cites *Mata* only as "guidance," and the defendant there—like the defendant in *Bartholomew*—had no ALPR policy at all. *See* Compl. ¶ 60, *McGinity*, No. 26-cv-02760 (N.D. Cal. Apr. 23, 2026), ECF No. 12 (alleging the defendant "does not make available or conspicuous to the public a usage and/or privacy policy about its ALPR cameras"). The finding of harm thus rested on the same factual predicate as *Bartholomew*, 118 Cal. App. 5th at 449—a predicate absent here because Home Depot has a policy.

*Rojas v. Regents of the University of California*, No. 26CV-03182, 2026 WL 3094679, at *1 (Cal. Super. Ct. Merced Cnty. Sept. 28, 2026), confirms the point. There, as here, the plaintiffs alleged that the defendant's posted ALPR policy omitted statutorily required elements, and that the policy was not conspicuously posted. *See* RJN, Ex. D ("Rojas Opp'n") at 15. The *Rojas* plaintiffs also invoked *Bartholomew* to argue that these deficiencies violated their "right to know which entities are collecting their ALPR data and how it is being used and maintained." *Id.* at 15–16 (quoting *Bartholomew*, 118 Cal. App. 5th at 449). The court rejected those theories and sustained the demurrer because "the complaint fail[ed] to allege with sufficient facts the actual individual harm caused by

the alleged violations." *Rojas*, 2026 WL 3094679, at *1. Plaintiffs' theories fail for the same reason.

**e. The privacy theory.**

Finally, Plaintiffs allege that the capture of their Vehicle Tracking Data effected an "invasion of [their] reasonable expectation of privacy in [their] movements and travel patterns." *E.g.*, FAC ¶ 206(a). Like the "concern and discomfort" theory, this theory rests on nothing more than a "subjective belief that [one's] privacy has been invaded by the collection and storage of [one's] data," which *Mata* held is not harm. 121 Cal. App. 5th at 1082. *Mata* likewise rejected the theory that statutory harm arises from "the very collection and retention of ALPR information that is permitted by the statute." *Id.* at 1091. In any event, Plaintiffs plead no facts showing that Home Depot tracked their movements at all. By Plaintiffs' own account, Home Depot's cameras record only a vehicle's arrival at and departure from a particular Home Depot lot, FAC ¶ 348, while the region-wide tracking they allege is attributed to Flock, *id.* ¶¶ 38, 82. Plaintiffs thus allege no movement-tracking harm that Home Depot "knowingly caused." Cal. Civ. Code § 1798.90.54(a); *see supra* note 2. Nor does any Plaintiff allege that anyone ever retrieved his or her records to reconstruct a travel pattern. Even the *Mata* plaintiff—whose two plates were captured across town at least 15 times, allegedly revealing his home, work, and daily routine—suffered no harm because no one but his own attorneys had accessed the data. *Mata*, 121 Cal. App. 5th at 1088–89, 1098.

* * *

Independently, Plaintiffs' own allegations sever any link between their claimed harms and the alleged deficiencies in the policy. The statute requires harm "by a violation"—harm that "arise[s] from the violation." *Mata*, 121 Cal. App. 5th at 1093. Yet Plaintiffs allege that Flock's network comprises at least 80,000 cameras and "in certain areas" it is "extremely difficult, if not impossible," to avoid capture "even when just driving on public roads and never interacting with a Flock customer." FAC ¶¶ 86, 94. On Plaintiffs' own theory, then, whatever "concern," "risk," or "exposure" they claim exists no matter how the policy was worded. *See supra* Section I.A.2.a–b.

**B. <u>Count I's "Unauthorized Use" Theory Fails</u>.**

The original complaint's Count I alleged that because Home Depot's policy omitted certain required elements, "no fully authorized purposes were ever established," so that "all access to and

use of" Plaintiffs' ALPR information was "unauthorized." Compl. ¶ 219. Home Depot showed that theory was circular and unsupported by the statute. *See* Defs.' Mot. to Dismiss Compl. at 15–16, ECF No. 33 ("MTD"). Plaintiffs now allege something narrower: that before December 29, 2025, Home Depot permitted law enforcement to access and use ALPR information for a purpose its then-operative policy did not describe, in violation of section 1798.90.52(b). FAC ¶¶ 318–27. Even setting aside Plaintiffs' lack of harm—and that no Plaintiff alleges that his or her own data was shared—this repackaged claim fails for two independent reasons. Section 1798.90.52(b) binds only operators, and Home Depot is not one. And even if Home Depot were an operator, the pre-revision policy disclosed and authorized the law-enforcement sharing Plaintiffs challenge.

**1. <u>Home Depot is not an operator.</u>**

The duty Count I invokes—to "[r]equire that ALPR information only be used for the authorized purposes described in the usage and privacy policy"—applies to operators alone. Cal. Civ. Code § 1798.90.52(b). The parallel end-user provision contains no such requirement. *Id.* § 1798.90.53. The ALPR Act defines "operator" as "a person that operates an ALPR system," as opposed to an "end-user" who is "a person that accesses or uses an ALPR system." *Id.* § 1798.90.5(a), (c). As *Navarro* explained, "operate" means "control," "manage," or "'have active involvement' in running the" ALPR system. 2022 WL 18280359, at *5.

Plaintiffs' own allegations foreclose any plausible inference that Home Depot is an ALPR operator. They allege that "[p]rivate entities like Defendants can form contracts with Flock for the purpose of installing and *using* ALPR cameras," FAC ¶ 83 (emphasis added); that Flock "manufactures ALPR cameras and the software systems used to collect, analyze, and share their data," *id.* ¶ 7; and that Flock pools customer data into "the Flock Safety Network," *id.* ¶¶ 8, 68. The access records an operator must keep "are maintained through Flock." *Id.* ¶ 171. Flock allegedly changed law enforcement customers' sharing settings without their knowledge (*id.* ¶¶ 157–61), which Plaintiffs call "a vendor-managed sharing configuration," *id.* ¶ 162. And the parking-lot placards marked "flock safety" bear QR codes leading to "a commercial website maintained by Flock." *Id.* ¶ 135. Every allegation points to the same operator: Flock.

The FAC's allegations about Home Depot's decision-making do not change the analysis.

Plaintiffs allege that Home Depot selects the business purposes for which ALPR information may be used, determines who may access ALPR information, decides whom to share it with, and establishes retention rules. FAC ¶¶ 101, 321. But the statute requires operators and end-users alike to make and disclose those very decisions with respect to ALPR information. *Compare* Cal. Civ. Code § 1798.90.51(b)(2)(A), (B), (D), (G), *with id.* § 1798.90.53(b)(2)(A), (B), (D), (G). Because every covered entity must make these decisions, they cannot distinguish an operator from an end-user. That distinction turns on who "operates" the system—who controls, manages, and runs it. *Navarro*, 2022 WL 18280359, at *5. Deciding what to do with the data an ALPR system generates is what any user does; it says nothing about who runs the system. Nor does Plaintiffs' characterization of Flock's customers as "day-to-day operators of the vendors' equipment," FAC ¶ 7, change the answer. That legal conclusion does not track the statute, which asks who operates the "ALPR system"—the "searchable computerized database." Cal. Civ. Code § 1798.90.5(d). Plaintiffs allege that Flock operates that database. FAC ¶¶ 8, 82; *see supra* Factual Allegations, Part B.

The same is true of Plaintiffs' allegations that Home Depot decides whether to deploy and mount ALPR cameras and owns the data generated by the ALPR cameras. FAC ¶¶ 85, 101. The fact remains that Plaintiffs allege Flock—not Home Depot—operates and manages the ALPR system itself, which is the focus of the statutory definition. Cal. Civ. Code § 1798.90.5(c). Because the ALPR system is the database, not the cameras, deciding where to mount a camera is not operating that system. And Home Depot's alleged ownership of the data is fully consistent with end-user status: the statute requires an end-user to identify the "custodian, or owner, of the ALPR information." *Id.* § 1798.90.53(b)(2)(E). These are the hallmarks of an entity that simply "accesses or uses" that system—in other words, an end-user. *Id.* § 1798.90.5(a).[5]

Plaintiff Sean McGinity has said as much when Flock is the defendant. In a parallel action in this District, McGinity—represented by the same counsel, Bursor & Fisher, P.A.—alleges that Flock is the ALPR operator. *See* RJN, Ex. E ("Flock Compl.") ¶ 114 ("Flock is an 'ALPR operator' . . . because it operates an ALPR system consisting of a searchable computerized database resulting from

[5] Nor does Plaintiffs' assertion that Flock "acted as Home Depot's agent," FAC ¶ 320, change the analysis; it is a legal conclusion unsupported by any alleged facts.

the operation of thousands of fixed cameras combined with computer algorithms."). The Flock Complaint describes the statute as regulating "ALPR operators (such as Flock), and end users (such as law enforcement agencies)." *Id.* ¶ 23. McGinity cannot have it both ways. Because Home Depot is not an ALPR operator, Count I fails without regard to any other defect in Plaintiffs' pleading.

**2. <u>Law enforcement sharing is authorized and disclosed.</u>**

Even if Home Depot were an operator, section 1798.90.52(b) of the ALPR Act requires only that an operator ensure "that ALPR information only be used for the authorized purposes described in the usage and privacy policy." Cal. Civ. Code § 1798.90.52(b). Count I alleges that law-enforcement access before December 29, 2025 fell outside those purposes because the then-operative policy "did not identify cooperation with law enforcement among the authorized purposes." FAC ¶¶ 324–25. But as shown above, the pre-revision policy did disclose and authorize that sharing. *See supra* Section I.A.2.d. Law-enforcement access was thus an authorized purpose, and Count I fails.[6]

**C. <u>Counts II and III Independently Fail Because Home Depot's ALPR Policy Satisfies Every Statutory Element.</u>**

Plaintiffs do not—and cannot—allege that Home Depot lacked an ALPR policy. Home Depot posted one, and it addresses every category the ALPR Act requires. What Plaintiffs actually seek is a different statute: one dictating the granularity of each disclosure, down to named custodians, fixed retention clocks, audit calendars, training syllabi, error-rate thresholds, and rosters of every potential downstream recipient. The Legislature wrote no such statute. It framed the disclosure requirements "in fairly general terms" and otherwise gave private entities "wide leeway" in handling ALPR data. *Bartholomew*, 118 Cal. App. 5th at 449. Courts may not "insert what has been omitted" into a statute. Cal. Civ. Proc. Code § 1858. And they have "no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." *Stephens v. Cnty. of Tulare*, 38 Cal. 4th 793, 801 (2006). Each of Plaintiffs' element-by-element challenges fails for that reason: each asks the Court to add a requirement the Legislature did not include.

Counts II and III allege violations of the operator and end-user usage and privacy policy

[6] Because the pre-December 29, 2025 theory fails, so does the Pre-Amendment Subclass Plaintiffs define around it. FAC ¶ 311.

requirements, sections 1798.90.51(b) and 1798.90.53(b). FAC ¶¶ 328–44. Count II fails at the first step because Home Depot is not an operator. *See supra* Section I.B.1. But both Counts fail on their own terms. Home Depot's ALPR Policy is before the Court, FAC ¶ 144, Ex. A at 25–26, and whether it satisfies the statute is a legal question resolvable on the pleadings. *See Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014). Plaintiffs label three elements "complete failures of disclosure"—custodian, retention, and law-enforcement sharing—and call the rest inadequate. FAC ¶ 153. Every policy version satisfies each requirement.[7]

**1. <u>The custodian requirement is satisfied.</u>**

The statute requires identification of "[t]he title of the official custodian, or owner, of the [ALPR system (operators)/ALPR information (end-users)] responsible for implementing this section"—*i.e.*, the custodian or owner responsible for implementing the required policy. Cal. Civ. Code §§ 1798.90.51(b)(2)(E), 1798.90.53(b)(2)(E). Home Depot's policy identifies "[s]elect asset protection associates" as responsible for implementing its Policy. FAC ¶ 144. Plaintiffs concede they "do not contend that Home Depot must identify an individual employee by name," *id.* ¶ 153(a), but insist that Home Depot's designation is "a category of employee, not a title." *Id.* ¶ 130(e). That is wrong. "Asset protection associate" is a job title: it is the designation Home Depot gives the personnel responsible for loss prevention. The statute calls for "[t]he title of the official custodian, or owner"—nothing more. It does not require that the title belong to a single person, prescribe any level of seniority, or forbid identifying a role held by more than one employee. Plaintiffs' related claim, that a person who "wished to ask Home Depot" about its ALPR practices "would not know whom to address," *id.* ¶ 130(e), is refuted by the policy itself: "If you have questions about this ALPR Usage and Privacy Policy, please send an email to privacy@homedepot.com." *Id.* ¶ 144.

**2. <u>The data retention requirement is satisfied.</u>**

The statute requires disclosure of "the length of time ALPR information will be retained" and "the process" for destruction. Cal. Civ. Code §§ 1798.90.51(b)(2)(G), 1798.90.53(b)(2)(G). Home Depot's policy states it "will retain ALPR Information for as long as necessary for the Authorized

[7] Counts II and III do not allege that Home Depot failed to post its policy conspicuously. *See* FAC ¶¶ 330, 340. To the extent Plaintiffs rely on their point-of-collection and placard allegations, those fail because the statute imposes no such requirements. *See supra* Section I.A.2.d.

Purposes and regularly destroy ALPR Information when we determine its retention is no longer necessary, unless we are informed that we must retain the ALPR Information to comply with legal processes or to satisfy other legal requirements." FAC ¶ 144. The statute does not require a fixed period: "this bill imposes no maximum retention period." RJN, Ex. B at 10; *see also* RJN, Ex. C at 29. And the policy describes a destruction process with a trigger (the data no longer serves an Authorized Purpose), an exception (compliance with legal processes), and an action (destruction). Plaintiffs' demand for a fixed retention clock asks the Court to impose a requirement the Legislature declined to adopt.

### 3. **The authorized purpose requirement is satisfied.**

The statute requires disclosure of "[t]he purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons." Cal. Civ. Code §§ 1798.90.51(b)(2)(D), 1798.90.53(b)(2)(D). Plaintiffs allege that before December 29, 2025, the ALPR Policy disclosed none of the three as to law enforcement, and that the revised ALPR Policy discloses a purpose but no process and no restriction on sharing with federal or out-of-state agencies. FAC ¶¶ 130(d), 153(c). Home Depot's ALPR Policy has disclosed all three items in every version.

***Purposes***. Both versions of the ALPR Policy list the only purposes for which sharing is allowed, FAC ¶¶ 124–25, and both disclose law-enforcement sharing. *See supra* Section I.A.2.d.

***Restrictions***. Both versions also disclose restrictions on the sharing of ALPR information. They begin with one—Home Depot "will not sell, share, or transfer ALPR Information to a third party outside The Home Depot . . . except in limited circumstances"—and then confine sharing to the enumerated purposes. FAC ¶ 130(d). Plaintiffs identify no undisclosed restriction. Instead, they invoke section 1798.90.55(b) of the ALPR Act, which generally prohibits a *public agency* from sharing ALPR information with another public agency. Plaintiffs concede that this provision does not apply to Home Depot, but argue nonetheless that Home Depot was required to disclose that information it shares may reach federal or out-of-state agencies to which a California public agency could not lawfully send it. *Id.* ¶ 16; *see id.* ¶ 154. Section 1798.90.55(b) regulates only public agencies and imposes no such disclosure obligation on Home Depot or any other private entity.

Plaintiffs' related allegation that Home Depot permitted federal and out-of-state agencies to

access ALPR information through Flock's national network, FAC ¶¶ 172, 331, also lacks a factual predicate. Nearly every allegation about sharing with ICE and other federal agencies concerns Flock's *National LPR Network*, not the Business Network through which private retailers may "opt into private, permission-controlled partnerships." *Id.* ¶¶ 71–73; *see id.* ¶¶ 21, 47, 157–61, 164–66, 190–91. The rest describe only local police access to Home Depot's cameras. *Id.* ¶¶ 20, 104. Plaintiffs tried to bridge the two networks only after Home Depot's motion identified this gap. *See* MTD at 14–15, 20. That attempt rests entirely on information and belief about what a business "may" do, FAC ¶¶ 74–79, without "the specific facts upon which the belief is reasonably based." *Gamevice, Inc. v. Nintendo Co.*, No. 18-cv-01942, 2018 WL 5310792, at *1 (N.D. Cal. Aug. 6, 2018) (citation omitted). And the assertion that Home Depot failed to verify "its own sharing configuration," FAC ¶ 331, rests entirely on misconfigurations at two police departments on a different network, not misconfigurations by Home Depot. *Id.* ¶¶ 157–61. This is exactly the speculative inference *Iqbal* forecloses. 556 U.S. at 678–79.

***Process***. That leaves Plaintiffs' claim that the Policy describes "no process by which a disclosure is authorized, no record kept of one, [and] no notice given of one." FAC ¶ 130(d). The statute does not define "process," and it imposes its disclosure requirements only "in fairly general terms." *Bartholomew*, 118 Cal. App. 5th at 449. Home Depot's ALPR Policy describes how sharing of ALPR information works: a default rule of no sharing, with sharing permitted only for the listed purposes. FAC ¶ 144. Plaintiffs would graft onto the ALPR Act requirements that appear nowhere in its text. Recordkeeping is governed by a separate provision requiring *operators* to log access, Cal. Civ. Code § 1798.90.52(a); reading the same duty into the disclosure requirement would render that provision surplusage. And the ALPR Act does not require notice to individuals at all. *Mata*, 121 Cal. App. 5th at 1090 n.12.

**4. <u>The training requirement is satisfied.</u>**

The statute requires "[a] description of the job title or other designation" of authorized personnel and "the training requirements necessary" for them. Cal. Civ. Code §§ 1798.90.51(b)(2)(B), 1798.90.53(b)(2)(B). The ALPR Policy designates "[s]elect associates and independent contractors with an Authorized Purpose, including, those in our security, asset

protection, information technology, and legal departments," and requires that they "undergo training on the appropriate access and use of ALPR Systems and ALPR Information in compliance with applicable privacy and security laws." FAC ¶ 144, Ex. A. Plaintiffs say no "job title or other designation is given" and that a commitment to training "identifies no requirement at all." *Id.* ¶¶ 130(b), 153(d). But the ALPR Act permits an "other designation" in lieu of a job title, and naming the departments whose personnel may access ALPR information—limited to those with an Authorized Purpose—does exactly that. Home Depot also identified the subject matter of training: "appropriate access and use of ALPR Systems and [] Information" and "compliance with applicable privacy and security laws." The statute does not require a syllabus, a schedule, refresher frequency, a completion protocol, or other administrative detail about the training; Plaintiffs' demand otherwise is a request to rewrite the ALPR Act.

**5. <u>The monitoring requirement is satisfied.</u>**

The statute requires a description of "how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws." Cal. Civ. Code §§ 1798.90.51(b)(2)(C), 1798.90.53(b)(2)(C). Home Depot's policy states that "[t]o ensure the security of ALPR Information and our compliance with applicable privacy and security laws, we will maintain and periodically check our ALPR System access records." FAC ¶ 144, Ex. A. Plaintiffs object that the policy identifies no "cadence," "person responsible," or "scope." *Id.* ¶¶ 130(c), 153(e). The statute requires a description of how the system will be monitored—not the staffing designations, audit schedules, and organizational detail Plaintiffs would add to it. The same sentence satisfies the end-user requirement of "a process for periodic system audits," Cal. Civ. Code § 1798.90.53(b)(2)(C): maintaining access records and periodically checking them is a periodic audit.

**6. <u>The accuracy requirement is satisfied.</u>**

The statute requires "a description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." Cal. Civ. Code §§ 1798.90.51(b)(2)(F), 1798.90.53(b)(2)(F). Home Depot's policy states that "[t]o identify and correct data errors, Authorized Personnel will periodically compare license plate readings recorded and license plate images captured by the ALPR System." FAC ¶ 130(f). That is the measure the ALPR Act asks for:

checking the machine-generated reading against the image it came from, for the stated purpose of identifying and correcting errors. Plaintiffs want a "threshold," a "sampling method," an "error rate," and a "workflow for correcting a record that has already been transmitted." *Id.* ¶¶ 130(f), 153(f). The statute requires none of that. Nor could Home Depot notify a driver of a misread plate, as Plaintiffs suggest it should, *id.* ¶ 130(f): ALPR systems capture plates and vehicle characteristics, not names or contact information. *See id.* ¶ 4; *see also supra* Section I.A.2.a.

**D. <u>Home Depot Maintains Adequate Access Records.</u>**

Count II's access-records theory fails for additional reasons. Plaintiffs allege that Home Depot violated its obligation as an "operator" to "maintain adequate records of each instance of ALPR system access." FAC ¶ 171; Cal. Civ. Code § 1798.90.52(a). Home Depot is not an operator, so the requirement does not apply. Regardless, Plaintiffs plead no facts supporting the theory.

Plaintiffs allege that Home Depot relies on Flock to maintain ALPR records rather than maintaining them "independently," and that a Flock retention issue with a different customer means Home Depot failed to comply. FAC ¶¶ 157, 171. That theory fails twice over. *First*, section 1798.90.52(a) of the ALPR Act requires that records be maintained, not that the operator maintain them in-house. *Second*, Plaintiffs do not allege that Home Depot's data was lost or unavailable—only that Flock had an issue with a different customer on a different network. *Iqbal* forbids that speculative inference. 556 U.S. at 678–79.

**E. <u>Plaintiffs' Claims of Inadequate Security Fail.</u>**

No ALPR count alleges a violation of the ALPR Act's security provisions. *See* FAC ¶¶ 330, 340. Plaintiffs instead appear to invoke those provisions as predicates for their UCL and negligence claims, alleging that Home Depot failed to adopt safeguards "to verify, or to prevent Flock from altering, the sharing configuration applicable to Home Depot's cameras." *Id.* ¶¶ 170, 364, 376(c); *see also id.* ¶¶ 162–63, 167, 171. Those allegations fail.

The FAC, like its predecessor, alleges no facts about the security of Home Depot's system—no unauthorized access, and no Flock misconfiguration of Home Depot's settings. Plaintiffs instead infer an absence of safeguards from misconfigurations at two police departments on a different network, not Home Depot's. *Id.* ¶¶ 157–62, 167, 170. That inference fails for the reasons discussed

above. *See supra* Section I.C.3; *Iqbal*, 556 U.S. at 678–79.

## II. COUNT IV—INVASION OF PRIVACY (CAL. CONST. ART. I, § 1) FAILS

Count IV alleges that Home Depot violated Plaintiffs' constitutional right to privacy by collecting ALPR information. Plaintiffs do not come close to pleading the three required elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion of the protected privacy interest." *A.B. ex rel. Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) (citation omitted).

*First*, there is no "legally protected privacy interest" here. "[A]n individual has no privacy interest in publicly-displayed information such as a license plate." *Navarro*, 2022 WL 18280359, at *11; *see City of Los Altos v. Barnes*, 3 Cal. App. 4th 1193, 1202 (1992). Plaintiffs all but concede the point, disclaiming reliance on "the momentary observation of a publicly displayed license plate" and asserting instead an interest in an "aggregated profile" of "movement patterns, and travel histories" supposedly built from repeated captures. FAC ¶¶ 347–48, 350. But Plaintiffs' alleged fears are misplaced. Home Depot's cameras capture only vehicles on or near its property, and Home Depot neither controls nor has access to other entities' cameras. In any event, Plaintiffs never allege that Home Depot actually compiled such a profile; they allege only that the data is searchable and "capable of being associated with" them. *E.g.*, *id.* ¶¶ 203, 348. *In re Google Location History Litigation* dismissed constitutional and intrusion claims on similar allegations, finding claims that stored location data could reveal a "mosaic" of users' lives "far too conclusory and speculative," and that "[a] person's general location is not the type of core, value, informational privacy" required to state a claim. 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (citation omitted). Nor does *Carpenter v. United States*, 585 U.S. 296 (2018), help Plaintiffs. *See* FAC ¶ 350. *Carpenter* itself disclaimed any intent to "call into question conventional surveillance techniques and tools, such as security cameras." 585 U.S. at 316. And "bits and pieces" of a person's movements "do not meet the standard of privacy established in *Carpenter*." *Google Location Hist.*, 428 F. Supp. 3d at 198. Captures at a store parking lot at one or a few points in time over many months are exactly such bits and pieces.

*Second*, Plaintiffs plead neither a reasonable expectation of privacy nor a serious invasion of privacy, *i.e.*, "an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l*

*Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). *Bartholomew* affirmed dismissal of a constitutional privacy claim at the pleading stage, holding that "open collection of ALPR information at a single location, which an individual can avoid by not parking at the Garage, is not an egregious breach of social privacy norms." 118 Cal. App. 5th at 451; *see also Navarro*, 2022 WL 18280359, at *11–12. The same result follows here. Home Depot's cameras are stationary fixtures at the entrances and exits of individual store lots, FAC ¶¶ 11, 107, and nearly every Plaintiff concedes that parking on the public street or shopping elsewhere was a viable alternative, *e.g.*, *id.* ¶¶ 207, 220, 245, 257, 270, 296, 309. The FAC's new allegations that Home Depot acted without notice or a complaint policy, *id.* ¶ 351, do not help: the *Bartholomew* defendant had no policy at all, yet the court still held its collection was not a serious invasion. 118 Cal. App. 5th at 451. Disclosed sharing for limited purposes is not a serious invasion either. *Navarro*, 2022 WL 18280359, at *12; *see supra* Sections I.A.2.d, I.C.3. And Plaintiffs' harm allegations, FAC ¶ 354, fail for the reasons explained above. *See supra* Section I.A.2. Count IV should be dismissed.

## III. COUNT V—INTRUSION UPON SECLUSION FAILS

Plaintiffs' intrusion upon seclusion claim fails for similar reasons. Plaintiffs must allege "(1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) that the intrusion was 'highly offensive' to a reasonable person." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 945–46 (N.D. Cal. 2022) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)).

Plaintiffs fail the first element. "[T]here is no intrusion into a private place 'when the plaintiff has merely been observed, or even photographed or recorded, in a public place.'" *Salazar v. Golden State Warriors*, No. C-99-4825, 2000 WL 246586, at *2 (N.D. Cal. Feb. 29, 2000). Home Depot's parking lot is a "public place[]." *People v. Strider*, 177 Cal. App. 4th 1393, 1402 (2009). And Plaintiffs' attempt to reframe the intrusion as the creation of "persistent, searchable" records, FAC ¶ 358, is the same speculative "aggregated profile" theory that fails under their constitutional claim.

Plaintiffs also fail to show the alleged intrusion would be highly offensive to a reasonable person. Even videotaping a *person* in public view is not highly offensive. *Salazar*, 2000 WL 246586, at *4. Cars do not deserve greater protection than their drivers. "[R]outine commercial behavior,"

like that alleged here, cannot satisfy the highly offensive standard. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022). Count V should be dismissed.

## IV. COUNT VI—UCL (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*) FAILS

Count VI invokes California's UCL, which prohibits "unfair competition" defined as "unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Plaintiffs lack UCL standing, and the claim should be dismissed for that reason alone.

UCL standing requires that a plaintiff "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321–22 (2011). That injury must be economic. *Craig v. Cap. One, N.A.*, No. CV 17-3788, 2018 WL 5857987, at *9 (C.D. Cal. Apr. 10, 2018). The FAC rests UCL standing on "value surrendered," "unjust enrichment," and data diminution. FAC ¶¶ 115, 118, 369–71. None works.

*First*, Plaintiffs allege they "would not have patronized" Home Depot stores had they known of its ALPR practices. *Id.* ¶ 370. The *Bartholomew* plaintiff made the same argument, and the court rejected it. 118 Cal. App. 5th at 451. The FAC's reliance on a generic Privacy and Security Statement line about complying with "applicable privacy and security laws," FAC ¶ 370, does not help: no Plaintiff alleges reading it, and a plaintiff who never saw a statement "did not rely on [it] and suffered no injury." *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) (dismissing UCL claims based on privacy misrepresentations where plaintiffs failed to allege they saw the statements before paying). Nor did Plaintiffs lose anything—they "would have purchased the same or comparable goods from another retailer," FAC ¶ 370, and received what they paid for without alleging dissatisfaction.[8] *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008).

*Second*, the diminished-value theory fails for the reasons given above. FAC ¶¶ 110–18; *see supra* Section I.A.2.c. The FAC alleges a market in which entities trade data, not one in which any Plaintiff "ever attempted or intended to participate." *Moore*, 83 Cal. App. 5th at 538; *see Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) ("[S]imply because a plaintiff's information

[8] Notwithstanding Plaintiffs' collective allegation that "Plaintiffs purchased goods from Home Depot during one or more visits," FAC ¶ 370, Plaintiff Morrill alleges that she is "not . . . a Home Depot customer" and that she entered the shared parking lot only "to get to her place of employment" at the adjacent PetSmart. *Id.* ¶¶ 223–24. Morrill therefore cannot have "surrendered" any value.

'is valuable in the abstract' . . . does not mean that the plaintiff has 'lost money or property.'").

*Third*, "unjust enrichment" based on Home Depot's participation in the Flock network, FAC ¶ 371, does not establish standing—California's UCL requires that the *plaintiff* lost money or property, not that the defendant was enriched. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). Plaintiffs lack UCL standing.

Plaintiffs also fail to allege unfair or unlawful conduct for the reasons stated above. The fraudulent-omission theory, FAC ¶ 366, independently fails because it is not pleaded with particularity, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009), and no Plaintiff alleges reading, much less relying on, anything Home Depot said or omitted, *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

Finally, Plaintiffs cannot obtain UCL restitution or an injunction. The ALPR Act's liquidated-damages remedy is an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). And Plaintiffs, who say they would have avoided Home Depot altogether, FAC ¶ 370, allege no real and immediate threat of future injury that could support prospective relief. *See, e.g.*, *Joseph v. Am. Airlines, Inc.*, No. 25-cv-2887-LL-DEB, 2026 WL 2087498, at *4 (S.D. Cal. July 20, 2026). Count VI should be dismissed.

## V. COUNT VII—NEGLIGENCE AND NEGLIGENCE PER SE FAIL

Count VII asserts negligence and negligence per se. FAC ¶¶ 373–79. Plaintiffs advance four duty theories—duty by statute, undertaking, special relationship, and foreseeability—plus negligence per se under California Evidence Code § 669. *Id.* ¶¶ 374–75. Each fails.

<u>No Duty</u>. The ALPR Act's comprehensive remedial scheme—a private right of action with liquidated damages and other relief—forecloses both a separate common-law duty and negligence per se. Cal. Civ. Code § 1798.90.54(b); *see Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000) (refusing to impose common-law duty where the Legislature created a specific remedial scheme); *Peatrowsky v. Persolve*, No. 2:12-cv-00935, 2014 WL 1215061, at *6 (D. Nev. Mar. 24, 2014) ("[W]here the statute itself provides for civil remedies, a plaintiff's recourse is under the statute, not . . . negligence per se."). Plaintiffs' allegation that Home Depot "affirmatively created the risk" by deploying ALPR technology, FAC ¶ 374, does not change the analysis. The duty Plaintiffs describe—to exercise care

in "configuring, securing, monitoring, retaining, using, and controlling access to" ALPR information—simply restates the ALPR Act's requirements. *Id.* Nor can Plaintiffs repackage these violations under Evidence Code § 669 as "evidence of Defendant's failure to exercise reasonable care." *Id.* ¶ 375. Section 669 borrows a statutory standard of care to establish breach; it does not create a duty. *Kohut v. Martin*, No. 1:22-cv-00472, 2026 WL 926250, at *10 (E.D. Cal. Apr. 6, 2026).

The "duty by undertaking" theory fares no better. The doctrine requires "services" rendered for another's protection, "physical harm," and either that the defendant's failure to exercise care "increased the risk of such harm," or that "the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §§ 323, 324A. Publishing a statutorily required policy is compliance, not a voluntary undertaking, and Plaintiffs allege no physical harm or reliance. FAC ¶ 374(b). No California court has recognized a retailer-customer duty regarding ALPR data, foreclosing any "special relationship" theory; the invitee framing cites no authority, and a proprietor's invitee duty concerns physical safety, not privacy. *Id.* ¶ 374(c); *see Zaragoza v. Wal-Mart Stores*, No. C-94-3627, 1995 WL 630012, at *2 (N.D. Cal. Oct. 20, 1995). Finally, the "foreseeability" theory depends on incidents unrelated to Home Depot. FAC ¶ 374(d); *see supra* Sections I.A.2, I.E.

No Damages. Negligence requires actual damages. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024). Plaintiffs plead none—only "concern and discomfort," a "foreseeable risk" of a wrongful stop, and speculative "diminishment." FAC ¶¶ 206, 377; *see supra* Section I.A.2. Indeed, Plaintiffs plead "in the alternative" for unnamed class members who suffered "wrongful stops, detentions, arrests, or other law-enforcement contacts"—injuries no named Plaintiff alleges having experienced. FAC ¶ 378. Count VII should be dismissed.

## CONCLUSION

Home Depot respectfully requests that the Court dismiss all seven counts with prejudice.

Dated: October 29, 2026

Respectfully submitted,

JONES DAY

*/s/ Darren K. Cottriel*

Darren K. Cottriel
Attorneys for Defendants
HOME DEPOT U.S.A., INC. and
THE HOME DEPOT, INC.